STATE of Minnesota, Appellant,

v.

Scott Edward GROHOSKI, Respondent.

No. C5-86-587.

Court of Appeals of Minnesota.

July 8, 1986.

Review Denied Aug. 27, 1986.

Hubert H. Humphrey, III, State Atty. Gen., Michael E. Molenda, Apple Valley City Atty., Rosemount, for appellant.

Philip G. Villaume, St. Paul, for respondent.

Considered and decided by PARKER, P.J., WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

The state appeals pursuant to Minn.R. Crim.P. 28.04, subd. 1(1) a trial court order

suppressing evidence of respondent's breath test. The state contends the trial court erred in determining a police officer lacked probable cause to invoke the implied consent law. We reverse and remand for trial.

## FACTS

At 12:30 a.m. on August 6, 1985 Apple Valley Police Sergeant Merle Lohse observed a motorcycle traveling 74 m.p.h. in a 50 m.p.h. zone. Sergeant Lohse followed as the motorcycle crossed the centerline while negotiating a curve in the road. After stopping the motorcycle, Lohse noticed that the driver, respondent Scott Grohoski, had bloodshot, watery eyes and a strong odor of alcoholic beverage. When asked if he had been drinking, respondent said he had "had a few."

Sergeant Lohse then administered several field sobriety tests which respondent did "very slowly and deliberately." Lohse said doing field sobriety tests in a slow and deliberate manner is indicative of intoxication.

Lohse then asked respondent to submit to a preliminary breath test or PBT. Respondent agreed, but did not provide an adequate sample in eight attempts. Lohse testified:

> I observed what was apparently his attempt to blow into the instrument. However, the light which indicates that it is receiving a sample would either not come on at all or would come on in only short little bits—little blips indicating that he would stop blowing immediately after beginning.

Lohse concluded that he was under the influence and placed him under arrest. An Intoxilyzer breath test showed respondent had a blood alcohol concentration of 0.10. Respondent was later charged with six counts of misdemeanor and gross misdemeanor DWI, Minn.Stat. § 169.121 (1984) and one count of speeding, Minn.Stat. § 169.14, subd. 2 (1984).

At a pretrial hearing, respondent said he crossed the center of the road on a curve, but that there is no actual centerline on that stretch of road because the traffic has worn it away. Respondent admitted telling Lohse he had been drinking. Respondent said he did "very well" on the field sobriety tests and claimed he passed the PBT test because he saw an orange light come on.

Sergeant Lohse testified that there are two amber lights on the PBT: a sample light and a "warn" light. The sample light comes on when the subject provides an adequate sample for testing. An amber "warn" reading indicates the subject has a blood alcohol concentration between 0.05 and 0.11. Lohse said the only light that came on was the sample light, which flickered on and off.

The trial court found that respondent passed all the field sobriety tests, that his bloodshot and watery eyes were explained by the fact that he was driving a motorcycle without eye protection, that Lohse could not correlate the odor of alcohol to the amount consumed by respondent, and that there was no evidence that respondent's speech was slurred or his pupils dilated.

The court concluded the officer lacked probable cause to believe respondent was under the influence or to invoke the implied consent law and ordered the Intoxilyzer test results suppressed.

## ISSUES

1. Did the trial court err in determining a police officer lacked probable cause to invoke the implied consent law?

2. Will the pretrial order have a critical impact at respondent's trial?

## ANALYSIS

■ To secure reversal of a pretrial order suppressing evidence, the state must demonstrate clearly and unequivocally that the pretrial court has erred in its judgment and that, unless reversed, the error will have a critical impact at trial. *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977).

### I.

■ The numerous cases discussing probable cause in an implied consent con-

text are summarized in *Johnson v. Commissioner of Public Safety,* 366 N.W.2d 347 (Minn.Ct.App.1985):

> Probable cause exists where all the facts and circumstances would warrant a cautious person to believe that the suspect was driving or operating a vehicle while under the influence. Probable cause is evaluated from the point of view of a "prudent and cautious police officer on the scene at the time of the arrest." In reviewing an officer's actions, the trial court should "consider the totality of the circumstances and should remember that trained law-enforcement officers are permitted to make inferences and deductions that might well elude an untrained person." Great deference should be paid to the officer's experience and judgment. A determination of probable cause is a mixed question of fact and of law. "Once the facts have been found the court must apply the law to determine if probable cause exists."

*Id.* at 350 (citations omitted).

A police officer's determination of probable cause is based upon his observation of various indicia of intoxication. "[E]ven a single objective indication of intoxication may be sufficient, depending upon the circumstances of each case." *Martin v. Commissioner of Public Safety,* 353 N.W.2d 202 (Minn.Ct.App.1984) (citing *Holtz v. Commissioner of Public Safety,* 340 N.W.2d 363 (Minn.Ct.App.1983)).

Under the facts presented here, the trial court erred in finding that this officer had no probable cause to believe respondent was under the influence.

Sergeant Lohse observed respondent driving his motorcycle at extreme speed late at night and saw him cross the center of the road on a curve. Upon stopping respondent, Lohse observed that his eyes were bloodshot and watery and he had an odor of alcohol about his person. Respondent admitted he had been drinking. These facts alone were sufficient to justify Sergeant Lohse's belief that respondent was under the influence. *See Swapinski v. Commissioner of Public Safety,* 368

N.W.2d 322, 324 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. July 26, 1985).

■ Lohse then gave respondent several field sobriety tests, which respondent performed slowly and deliberately and with varying degrees of success. Respondent swayed when he tilted his head back and closed his eyes. Lohse testified that respondent's overall performance was consistent with his being under the influence of alcohol. The trial court concluded the field sobriety tests showed respondent was not under the influence. The trial court erred by not considering the results of the field sobriety tests from the viewpoint of the officer on the scene at the time of the arrest. *See Johnson,* 366 N.W.2d at 350.

■ The trial court also improperly focused on the absence of other indicia of intoxication such as erratic driving, slurred speech, and dilated pupils. A DWI suspect need not exhibit every known sign of intoxication in order to support a determination of probable cause. *See Holtz,* 340 N.W.2d at 365.

■ Further, the trial court made no attempt to resolve the conflicting testimony regarding preliminary breath testing. The officer said he administered no less than eight PBTs but respondent never provided an adequate sample, in effect refusing the test. This refusal, together with the officer's other observations, gave him sufficient reason to invoke the implied consent law. *See* Minn.Stat. § 169.123, subd. 2(a) (1984); *see also Holtz,* 340 N.W.2d at 365.

For these reasons, the trial court erred in concluding Sergeant Lohse lacked probable cause to invoke the implied consent law and in suppressing the Intoxilyzer test results.

II.

■ The state must also satisfy its burden of demonstrating that this error will have a critical impact at trial. *See Webber,* 262 N.W.2d at 159. Here respondent was charged with six misdemeanor and gross misdemeanor DWI offenses under Minn. Stat. § 169.121, subd. 1. (1984). That stat-

ute makes it a crime for a person to drive when the person is under the influence of alcohol; when the person's alcohol concentration is 0.10 or more; or when the person's alcohol concentration as measured within two hours of the time of driving is 0.10 or more. *See id.* at subd. 1(a), (d), and (e). Respondent was charged with three gross misdemeanor offenses because of a previous DWI conviction. *See* Minn.Stat. § 169.121, subd. 3(a) (1984).

The state contends the suppression order will have a critical impact at trial because it will result in dismissal of four offenses charged under Minn.Stat. § 169.121, subd. 1(d) and 1(e). Only misdemeanor and gross misdemeanor charges under Minn.Stat. § 169.121, subd. 1(a), and a speeding charge would then remain for trial. The narrow issue presented is whether the state can establish critical impact where a pretrial order suppresses evidence essential to proof of four criminal counts but not essential to two other related charges.

The state cites *State v. Hicks*, 301 Minn. 350, 222 N.W.2d 345 (1974), as controlling on this issue. In *Hicks* the supreme court reversed a pretrial order suppressing both a defendant's statements to police and the results of a blood alcohol test. Id. at 351, 222 N.W.2d at 347. The supreme court held that the pretrial order was appealable [1] because it would prevent a prosecution for driving with 0.10 blood alcohol concentration even though a driving under the influence charge would remain. *Id.* at 352–53, 222 N.W.2d at 347.

Respondent contends *State v. Eisenbacher*, 368 N.W.2d 369 (Minn.Ct.App.1985), is the more relevant precedent. In *Eisenbacher* the state failed to demonstrate that suppression of statements made by an unknown citizen informant would have a critical impact at a DWI trial because the state could still present testimony regarding the defendant's:

> abnormally slow driving, the weaving within his traffic lane, the inability to maintain his balance when picking the money off the ground, the distinct odor of alcohol on his breath and his inability to pass field sobriety tests.

*Id.* at 371. There was no reference to chemical testing in *Eisenbacher*, which compels the inference that Eisenbacher was only charged with driving while under the influence. *See* Minn.Stat. § 169.121, subd. 1(a).

Here, the state charged respondent with six DWI offenses, four of which require proof of blood alcohol concentration. Without chemical test evidence, the state cannot establish that respondent's blood alcohol level was 0.10 or above. We conclude the state has demonstrated that suppression of Intoxilyzer evidence will have a critical impact on respondent's trial. *See Hicks*, 301 Minn. at 353, 222 N.W.2d at 347; *see also State v. Galarneault*, 354 N.W.2d 597 (Minn.Ct.App.1984).

### DECISION

The trial court erred in suppressing evidence of chemical testing and that error will have a critical impact at trial.

Reversed and remanded for trial.

---

1. *Hicks* was decided under former Minn.Stat. § 632.11 (repealed by 1979 Minn.Laws, ch. 233, § 42). That statute was superseded by former Minn.R.Crim.P. 29.03. *See e.g. Webber*, 262 N.W.2d at 159. Appeals from pretrial orders to the Court of Appeals by a prosecuting attorney are now governed by Minn.R.Crim.P. 28.04, subd. 1(1).