Craig Kerry JOHNSON,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C3-86-216.

Court of Appeals of Minnesota.

Aug. 26, 1986.

Tristam O. Hage, Hage & Mitchell, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Mary B. Magnuson, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by RANDALL, P.J., and LANSING and HUSPENI, JJ.

## OPINION

RANDALL, Judge.

Respondent's driver's license was revoked for failing the Intoxilyzer breath test under the implied consent law. At the implied consent hearing, respondent successfully argued that the test was invalid, and the trial court rescinded the revocation. The Commissioner of Public Safety appeals. We reverse.

## FACTS

On October 26, 1985, at approximately 9:00 p.m., State Trooper Thomas L. Fraser saw respondent Craig Kerry Johnson speeding and weaving as he was driving on 35W. After pulling him over, Fraser observed indicia of intoxication, gave respondent field tests and a preliminary breath test, and then arrested him for driving while under the influence.

Fraser, a certified Intoxilyzer operator, prepared to give respondent an Intoxilyzer

test. He checked respondent's mouth and found snuff. Respondent was brought into the bathroom; Fraser had him wash his mouth repeatedly until Fraser was satisfied it was clean. Fraser checked in respondent's mouth and had him lift up his tongue to ensure that he had no more snuff in his mouth.

Fraser then worked on reports while respondent sat beside him. He testified that after 13 minutes had passed, he turned the machine on. Fraser testified that it took a couple of minutes to get the machine going to the point where respondent could provide a breath sample. Fraser had respondent open his mouth one more time and he checked it to ensure he had nothing in his mouth.

Fraser then performed the breath test. He initialed the portion of the test record which reads, "Subject has been under observation for 15–20 minutes." He noted in the remarks section that respondent's mouth was washed at 21:33 and the test was started at 21:46. The printed portion of the test record indicated the air blank test was begun at 21:41, the first subject test at 21:42, and the second subject test at 21:46. All the readings were within acceptable limits, and Fraser observed nothing indicating the machine was not in proper working order. Fraser formed the opinion that the test was accurate and that the Intoxilyzer was working properly.

Fraser testified that the Bureau of Criminal Apprehension requires him to have the subject under observation for 15 to 20 minutes prior to running the subject test. This is to ensure that the subject has not put any foreign substance into his mouth which would affect the reliability and accuracy of the test. The parties agree that snuff in a subject's mouth could hold residual alcohol and could cause an inaccurate test result. However, Fraser was informed in training that residual mouth alcohol dissipates in two to three minutes and thereafter, even if initially present, should no longer present an impediment to an accurate test. Thus, the BCA set a 15 to 20 minute observation period so that there would be no

chance that a foreign substance like snuff could affect the test.

Fraser testified that he did not know the effect on the test of a person who has been drinking while he had snuff in his mouth.

The trial court, in oral findings made at the close of the hearing, found that respondent washed his mouth out at 21:33 and that the test reading was at 21:44 or 21:46 at the latest. It found that the officer's observation period was 13 minutes, rather than 15. The trial court did not accept the officer's testimony as to the minimal problem even if residual mouth alcohol is present and thus felt that, because the observation period did not last at least 15 minutes, it had no choice but to rescind the revocation.

## ISSUES

1. Was the trial court clearly erroneous when it found the observation period lasted 13 minutes?

2. Did the trial court err when it determined that the Commissioner's failure to prove that respondent was under observation for 15 minutes prior to the administration of the Intoxilyzer test rendered the results of the test invalid, when it was established that respondent had chewing tobacco in his mouth just prior to the start of the observation period?

## ANALYSIS

### I.

*13–minute observation period*

◾ Findings of fact of the trial court will not be set aside unless clearly erroneous. *State, Department of Highways v. Beckey*, 291 Minn. 483, 487, 192 N.W.2d 441, 445 (1971); *Kadrlik v. Commissioner of Public Safety*, 388 N.W.2d 8 (Minn.Ct. App.1986). Appellant Commissioner argues that the total observation period was 15 minutes or longer and the trial court erred in finding only 13. Appellant points to Fraser's testimony that he waited 13 minutes after chewing tobacco was cleansed from respondent's mouth and then

activated the Intoxilyzer. Fraser testified that the Intoxilyzer takes approximately two minutes to go through its internal diagnostic procedure and the first air blank test. The Commissioner contends that this testimony was uncontradicted and the court made no suggestion that the trooper's testimony was not credible. Thus, the Commissioner argues that the trial court's conclusion that respondent was not under observation for at least 15 minutes prior to the test is not supported by the evidence.

Respondent argues that the trooper's comment on the test record indicates that respondent washed his mouth out at 21:33 and the printed record indicates that the breath samples were analyzed at 21:42 and 21:46 hours respectively. Therefore respondent argues that the court's finding of a 13–minute observation period was essentially correct.

The trial court made an oral finding that respondent had been under observation for 13 minutes. In making this finding, the trial court stated that it relied on the test record indicating that respondent's mouth was washed out at 21:33 and the test reading was either at 21:44 or 21:46, a period of less than 15 minutes. On the somewhat conflicting facts set forth in this case, we cannot say the trial court was clearly erroneous in finding that the observation period was 13 minutes, not 15 minutes. We affirm that finding of the trial court.

## II.

### Validity of the test

Since we affirm the trial court on its finding of length of the test, we now must address the issue of whether the trial court erred when it rejected the test solely because the observation period was 13 minutes, not 15 minutes or more as recommended by the BCA guidelines. The trial court determined that when the Commissioner failed to prove that respondent was under observation for 15 minutes prior to the administration of the Intoxilyzer test, the results of the test were invalid. We find cases dealing with questionable observation periods difficult. Although we understand that the BCA standards are recommendations and a violation may not necessarily invalidate the test per se, we are also aware that the BCA standards are distributed to law enforcement personnel for use in administering these tests with the specific instructions that all the BCA standards should be carefully followed so as to ensure an accurate test result. Thus, we are troubled by the State presenting cases in which the BCA's own guidelines are not followed.

The record does support respondent's position that the BCA standards are promulgated to law enforcement personnel for a purpose, and that a deviation from them may impinge on the accuracy of the test.[1]

1. The transcript from the hearing shows the following dialogue between respondent's attorney and the testing officer during cross examination:

Q. That's something that by BCA standards that you are required to do; you are required, before you run that subject test, the first subject test, you are required to have that person under observation for 15 to 20 minutes; is that rights?
A. Yes.
Q. And the purpose in doing that would be to make sure that the person hasn't introduced any foreign substance in his mouth that might in any way affect the reliability and accuracy of the test; correct?
A. Right.
Q. Among the items that you would be concerned about during that 15 to 20 minute period would be the presence of snuff found in this case; correct?

A. It could have an effect. We just don't want anything in there.
Q. You don't want anything that could actually affect, what, mucus membranes of the mouth; you don't want that affected, correct?
A. I wouldn't put it that way. What we're concerned about as far as snuff would be it would hold residual alcohol. The machine wouldn't test snuff per se.
Q. So once that snuff is removed you want to have that person under observation, you want to make sure that you have a good 15 to 20 minutes after the snuff is removed from the mouth; correct?
A. True.
Q. Is that the something that's required by the BCA standards?
A. Yes.
Q. You know, if you didn't keep that person under observation for 15 to 20 minutes and the person had had some foreign substance

We urge that BCA standards be strictly followed. That lessens the burden of a reviewing court which must determine the validity of the test. When the State's own recommended guidelines are not followed, the Commissioner's office bears the risk on appeal.

It is settled that the Commissioner has the burden of proof in implied consent cases, and that the burden of proof is by preponderance of the evidence. *King v. Commissioner of Public Safety*, 366 N.W.2d 613, 615 (Minn.Ct.App.1985).

The proponent of the Intoxilyzer test must make a prima facie showing that its administration on the particular occasion was reliable. *State v. Dille*, 258 N.W.2d 565, 567 (Minn.1977); *Hager v. Commissioner of Public Safety*, 382 N.W.2d 907, 909 (Minn.Ct.App.1986). The proponent does not have an absolute burden to show trustworthiness. *Tate v. Commissioner of Public Safety*, 356 N.W.2d 766, 768 (Minn. Ct.App.1984). After a prima facie showing of trustworthy administration, the driver must suggest reasons why the test is untrustworthy. *Hager*, 382 N.W.2d at 909.

We have held previously that a deficiency in observation does not in itself invalidate the test, but does give the driver an opportunity to explain why it makes the test results unreliable. *Melin v. Commissioner of Public Safety*, 384 N.W.2d 474, 476 (Minn.Ct.App.1986). In this case, respondent's claim of unreliability is based on the tobacco which respondent washed out of his mouth just prior to the start of the 13 minute period. The trooper did testify that snuff could hold residual alcohol. The trooper also testified that the lack of a 15–20 minute observation period, when coupled with the driver who, in fact, had some foreign substance in his mouth, could lead to a concern about the test's accuracy. However, the trooper went on to explain that his training indicated that any residual mouth alcohol from tobacco dissipates in two to three minutes. The 15–20 minute time period, therefore, was set so that there could be no chance that residual mouth alcohol, if any, would affect the test. The trial court rejected this testimony because the officer did not provide the basis of his opinion.

However, we have held that a driver does not meet his burden by identifying an ingested or regurgitated substance without showing that it raises the results of the test. *Melin*, 384 N.W.2d at 477. In *Pasek v. Commissioner of Public Safety*, 383 N.W.2d 1 (Minn.Ct.App.1986), this court held that mere speculation that a pinch of tobacco would affect the validity of the tests was not sufficient to rebut a prima facie case put forth by the Commissioner. *Id.* at 4.

We now have the issue of whether the Commissioner made a prima facie case of trustworthy administration where the facts indicate that there was a foreign substance in the mouth which "could" affect the test, and a finding that the observation period was two minutes less than the recommended minimum. We note first of all that the officer's testimony went only to the possibility of the snuff having an effect. He did not testify that it did and, in fact, testified that as far as he could tell it didn't. Respondent offered no evidence, expert opinion or otherwise, to the effect that the test was tainted. Respondent did not offer any evidence that a 13–minute observation period plus snuff in the mouth just prior to the start of the test presumptively invalidates the test. Basically, all respondent argues is that the State did not follow its own guidelines and thus the test result could not be trusted.

We have previously held that where there are sufficient indicia of reliability, it is not mandatory that the BCA checklist be followed on every single item in order for a test to be allowed. *Kooi v. Commissioner*

like snuff in his mouth, the concern is that you might have an inaccurate test result; correct?

THE COMMISSIONER: Objection. Irrelevant.

THE COURT: Overruled.
A. That would be the purpose, yes.

*of Public Safety,* 363 N.W.2d 487, 489 (Minn.Ct.App.1985).[2]

While the trooper agreed that the reason for the observation period is specifically to rebut any concern about the test results because of the presence in the mouth of foreign substances that could hold residual mouth alcohol, he noted that the residual mouth alcohol, if any, evaporates within 2–3 minutes. That testimony was not rebutted. Thus, even accepting the fact of chewing tobacco in the mouth just prior to the start of the observation period, and accepting the fact of an observation period two minutes below the recommended minimum, there is no evidence in the record to support a conclusion that the test result would have been any different.

Thus, we hold that the trial court erred in rescinding the revocation based *solely* on a finding that the observation period was 13 minutes, or two minutes short of the recommended minimum.

### DECISION

The trial court's rescission of the revocation is reversed.

**Reversed.**

Robert J. Winzenburg, Mankato, for relator.

Daniel E. Wall, Roseville, for Thin Film Technology Corp.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Department of Jobs and Training.

Considered and decided by LESLIE, P.J., and WOZNIAK and CRIPPEN, JJ., with oral argument waived.

**2.** *Kooi* was a case involving a breathalyzer while this case involves the Intoxilyzer. We decline to

distinguish our holding in *Kooi* on that basis.