STATE of Minnesota, Appellant,

v.

Michael William WICKERN,
Respondent.

No. C6–87–625.

Court of Appeals of Minnesota.

Sept. 8, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Donald A. Wirries, Twin Valley City Atty., Moorhead, for appellant.

Mark R. Hellerud, Hellerud and Larson, Ada, for respondent.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

The State of Minnesota appeals from a pre-trial order suppressing the results of an Intoxilyzer 5000 breath test in a prosecution for violation of Minn.Stat. § 169.121, subds. 1(a), (d), and (e) (Supp.1985). We reverse and remand for trial.

## FACTS

Respondent Michael William Wickern was arrested at approximately 2:00 a.m. on June 28, 1986, and charged with violating Minn.Stat. § 169.121 (Supp.1985), the DWI statute. About 15 to 25 minutes were spent at the scene, and then 10 to 15 minutes were spent transporting respondent to the jail. Respondent was then placed in a holding cell. At 2:46, the Implied Consent Advisory form was read to respondent, after which he submitted to the breath test. The Intoxilyzer test was administered at about 2:48 a.m., and yielded an alcohol concentration of .14.

At the omnibus hearing on September 8, 1986, respondent moved to suppress the results of the breath test. The trial court denied the motion on December 19, 1986. Three months later, respondent again moved to suppress the test results. At the second hearing, the parties agreed for the purposes of the motion:

(1) that the BCA suggests delaying a test for 15 to 20 minutes after burping, regurgitating, or ingesting anything;

(2) that respondent was not viewed by the testing officer for a full 15 minutes before the test;

(3) that respondent may have burped at some time during that 15 minute period.

Respondent testified at the hearing that before he was arrested he had eaten spicy food and had drunk beer at an all-day feast, which resulted in an upset stomach and caused him to belch and pass gas while in the holding cell. He testified that he had not placed anything in his mouth between 2:00 a.m. and 2:53 a.m. He stated that he had not told either the trooper or the jailer about his upset stomach, did not ask for medication, and did not vomit or regurgitate. Respondent's friend, Barbara Melting, also testified that respondent had complained of an upset stomach about noon on the day before the arrest, and was belching and passing gas just before leaving the party. She stated that it was her experience that spicy food gives the respondent gas, causing an upset stomach and causing him to belch.

The trial court granted respondent's motion, stating that it was suppressing the test results because "the Officer did not observe the 15 minute observation time." The state has appealed.

## ISSUE

Did the trial court err in suppressing the results of an Intoxilyzer test on the basis that respondent had not been observed for 15 minutes before the test?

## ANALYSIS

■ On an appeal from a pre-trial order, this court will only reverse the determination of the trial court if the state demonstrates clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial. *See State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987) (citing *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977)).

■ The state claims that suppressing the test results will have a critical impact on the outcome of the prosecution of the alcohol concentration charge because it will be impossible to proceed. In support, the state cites *State v. Grohoski*, 390 N.W.2d 348 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. Aug. 27, 1986). In *Grohoski*, the state charged the defendant with six counts of misdemeanor and gross misdemeanor DWI in violation of Minn.Stat. § 169.121, subd. 1 (1984). The trial court suppressed evidence of the defendant's breath test. As here, the state contended that the suppression order would have a critical impact at trial because it would result in dismissal of the four offenses requiring proof of alcohol concentration. This court concluded that since the four charges required proof of alcohol concentration, and the state could not establish that the defendant's alcohol level was 0.10 or above without the chemical test evidence, the critical impact test was met. Similarly, without the test results in this case the state would be unable to prove that respondent's alcohol concentration was 0.10 or above, which is necessary to prove a violation of either Minn.Stat. § 169.121,

subd. 1(d) or (e). Thus, the state has met the critical impact burden.

The state next claims that the trial court erred in suppressing the test because an alleged deficiency in the observation period goes solely to the weight to be given to the test by the trier of fact, and does not preclude the admissibility of the test results. We agree.

 The proponent of the Intoxilyzer test must make a prima facie showing that its administration on the particular occasion was reliable. *Johnson v. Commissioner of Public Safety*, 392 N.W.2d 359, 362 (Minn.Ct.App.1986). This is done when the state establishes that the test was conducted by a certified operator and the machine was in proper working order and the chemicals in proper condition. *State, City of St. Louis Park v. Quinn*, 289 Minn. 184, 187–88, 182 N.W.2d 843, 845 (1971), *quoted in Hounsell v. Commissioner of Public Safety*, 401 N.W.2d 94, 95 (Minn.Ct.App. 1987). The proponent does not have an absolute burden to show trustworthiness. *Johnson*, 392 N.W.2d at 362 (citing *Tate v. Commissioner of Public Safety*, 356 N.W.2d 766, 768 (Minn.Ct.App.1984)). After a prima facie showing of trustworthy administration, the driver must suggest reasons why the test is untrustworthy. *Id.* at 362 (citing *Hager v. Commissioner of Public Safety*, 382 N.W.2d 907, 909 (Minn. Ct.App.1986)).

This court has consistently indicated that a deficiency in observation of the subject does not of itself invalidate the test, but merely gives the driver an opportunity to challenge the test's trustworthiness by suggesting why such a failure makes the test results unreliable. *See Melin v. Commissioner of Public Safety*, 384 N.W.2d 474, 476 (Minn.Ct.App.1986); *Kooi v. Commissioner of Public Safety*, 363 N.W.2d 487, 489 (Minn.Ct.App.1985); *Tate*, 356 N.W.2d at 767–68.

In *Johnson*, this court held that the trial court erred in rescinding the revocation of the driver's license based solely on a finding that the observation period was 13 minutes, two minutes short of the recommended minimum. *Id.*, 392 N.W.2d at 363.

This court has also held that a driver has not met his burden of proving that the test was unreliable by identifying an ingested or regurgitated substance without showing that it raises the results of the test. *Melin*, 384 N.W.2d at 477.

We therefore conclude that the trial court erred in suppressing the test results based solely on a deficiency in the observation period prior to administration of the test. Objections raised by respondent do not affect the admissibility of the test, but merely go to the weight that evidence is to be given by the trier of fact.

### DECISION

Reversed and remanded for trial.