# IN THE COURT OF APPEALS OF IOWA

No. 13-1024
Filed April 16, 2014

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**STEVEN SHERWOOD BUNCE,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Polk County, James D. Birkenholz,

District Associate Judge.


      A defendant appeals his conviction for operating while intoxicated.

**AFFIRMED.**


      Daniel Rothman of McEnroe, Gotsdiner, Brewer, Steinbach, P.C., West

Des Moines, for appellant.

      Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney

General, John P. Sarcone, County Attorney, and Jordan Rolling, Assistant

County Attorney, for appellee.


      Considered by Tabor, P.J., McDonald, J., and Eisenhauer, S.J.*

      *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**TABOR, J.**

Steven Bunce challenges the district court's denial of his motion to suppress. Bunce claims the state trooper who stopped his vehicle did not have reasonable grounds to request a preliminary breath test (PBT) under Iowa Code section 321J.5 (2013). Bunce also claims the court erred in finding probable cause for an arrest. Because we find reasonable grounds existed for the trooper to request a breath sample from Bunce, we affirm.

## I. Background Facts and Proceedings

Just before one a.m. on February 14, 2013, Iowa State Patrol Officer Matt Papin saw Bunce's Ford Fusion merge onto Interstate 80 from the ramp at Merle Hay Road. Papin noticed Bunce's car begin to pull away from his patrol vehicle. The trooper clocked the Fusion's speed at eighty miles per hour, and turned on his lights to initiate a stop. Other than the excessive speed, Papin did not observe any erratic driving, and Bunce responded to the trooper's lights by pulling over to the side of the interstate without incident.

Trooper Papin walked to the passenger side of the vehicle and began a routine traffic stop. After Papin explained the reason for the stop, the passenger, not driver Bunce, spoke with the trooper. During the initial interaction, Papin did not detect signs of intoxication. Then Papin asked Bunce to accompany him to his patrol car. While sitting with Bunce in the patrol car, Papin noticed an odor of alcohol that became stronger the longer they sat together. Papin asked Bunce about the smell, and Bunce admitted he had "one beer." Based on these

circumstances, Papin asked Bunce to perform standard field sobriety tests: the horizontal gaze nystagmus (HGN),[1] the walk-and-turn, and the one-leg stand.

Bunce failed the HGN test by exhibiting four of six possible clues of intoxication. When Papin was administering the HGN test, he noticed Bunce's eyes were bloodshot. During the walk-and-turn test, Bunce initially did not follow the officer's instructions precisely, but quickly corrected himself. The trooper checked one clue for impairment, a passing score for Bunce on the walk-and-turn test. During the one-leg-stand test, the officer noticed Bunce "swaying consistently" which became more pronounced toward the end of the test. The swaying merited Bunce one clue for impairment, but the trooper considered that a passing test.

After the field sobriety testing, Papin asked Bunce to submit a breath sample for the PBT. The PBT measured Bunce's blood alcohol content (BAC) as .143. Trooper Papin asked Bunce if he felt the effects of alcohol; Bunch replied "yeah." Papin then placed Bunce under arrest. The trooper invoked implied consent based on both the PBT result and arrest. The DataMaster testing indicated a BAC of .129 at 1:53 a.m.

The State filed a trial information on March 21, 2013, charging Bunce with operating a motor vehicle while under the influence, in violation of Iowa Code section 321J.2. Bunce filed a motion to suppress on April 25, arguing Trooper Papin did not have the reasonable grounds required under section 321J.5 to request a PBT. After the district court denied the motion, Bunce waived his right

---

[1] The trooper also administered a vertical gaze nystagmus test; Bunce did not show a vertical nystagmus.

to a jury trial and stipulated to a bench trial on the minutes of testimony. The court entered a guilty verdict on May 31, 2013. Bunce now appeals.

## II. Standard of Review

We review a district court's denial of a motion to suppress on statutory grounds only to correct errors of law. *State v. Owens*, 418 N.W.2d 340, 342 (Iowa 1988).

## III. Analysis

### A. Did Bunce's speeding in the wee hours of the morning, reliance on his passenger to converse with the officer, odor of alcohol, admission to drinking, bloodshot eyes, failure of the HGN test, and clues of impairment on the remaining field sobriety tests give the trooper reasonable grounds to request a breath sample for the PBT under Iowa Code section 321J.5?

Bunce argues because he passed two of three field sobriety tests, the trooper lacked reasonable grounds to request a PBT. The State responds that a reasonable grounds determination is based "on the totality of an officer's observations rather than dictated by the outcome of the field sobriety tests." We agree with the State's position.

Iowa Code section 321J.5 allows a peace officer to request a breath sample for a PBT when the officer has "reasonable grounds to believe" a driver has operated a motor vehicle while under the influence of an alcoholic beverage or while having an alcohol concentration of .08 or more. "The reasonable grounds test is met when the facts and circumstances known to the officer at the time action was required would have warranted a prudent person's belief that an offense had been committed." *State v. Owens*, 418 N.W.2d 340, 342 (Iowa 1988). The "reasonable ground for belief" standard is "tantamount to probable

cause." *Cf. State v. Freeman*, 705 N.W.2d 293, 298 (Iowa 2005) (discussing "totality of circumstances" test for Iowa Code section 804.7).

Field sobriety tests allow officers to assess whether a driver is under the influence of alcohol. *See State v. Murphy*, 451 N.W.2d 154, 158 (Iowa 1990) (discussing HGN, walk-and-turn, and one-leg-stand tests as reliable indicators of intoxication). But the results of field sobriety tests are not the only evidence available to officers conducting an investigatory stop. It is the totality of an officer's observations that allows him or her to request a breath sample for preliminary testing.

For instance, an officer may take into account the manner of driving when deciding whether to request a breath sample. *Cf. State v. Dominguez*, 482 N.W.2d 390, 392 (Iowa 1992) (quoting instruction allowing jury to consider manner of driving in deciding if defendant was under the influence). Here, the trooper saw Bunce rapidly accelerating and traveling well over the speed limit on the interstate. Speeding can indicate impaired mental judgment and may be considered by an officer deciding if a driver is under the influence. *See Zill v. State*, 355 S.W.3d 778, 786 (Tex. App.—Houston [1st Dist.] 2011). An officer may also consider the early morning hour of the stop, "a time notorious for drunken driving." *See State v. Rosenstiel*, 473 N.W.2d 59, 62 (Iowa 1991), *overruled on other grounds by State v. Cline*, 617 N.W.2d 277 (Iowa 2000).

Furthermore, the driver's interactions with the officer during the traffic stop feed into the overall determination of intoxication. In this case, the officer found it unusual that the passenger did most of the talking during the stop for speeding:

> I didn't think I was getting too many verbal responses from Mr. Bunce, just movement and just complying with my actions, not really doing any talking or explaining of anything or stating anything, it was mostly coming from the passenger. . . . [I]t did pique my curiosity why that was.

A reasonable person in the trooper's situation could have viewed Bunce's reluctance to converse with him as an effort to minimize the trooper's exposure to any odor of alcohol from the driver's breath. *See Bixenman v. Kansas Dep't of Revenue*, 307 P.3d 217, 220 (Kan. Ct. App. 2013) (noting officer found driver's behavior unusual when he would turn away from the officer when speaking).

Once the trooper moved Bunce into his patrol car, the odor of alcohol coming from Bunce was apparent. The trooper then asked Bunce if he had been drinking alcohol and Bunce admitted having "a little bit to drink." The trooper asked how much, and Bunce said he had "one beer." Both the smell of alcohol and the admission to drinking contributed to the trooper's reasonable grounds to believe Bunce was violating chapter 321J. *See State v. Marks*, 644 N.W.2d 35, 38 (Iowa Ct. App. 2002) (listing odor of alcohol, bloodshot eyes, and admission to consuming "some beer" as fueling the finding of reasonable cause to believe Marks had been driving while intoxicated).

At this point in the investigation, the trooper secured Bunce's agreement to perform the field sobriety tests. When conducting the HGN test, Trooper Papin noticed Bunce's bloodshot eyes, a traditional sign of intoxication. Trooper Papin also found four of six clues for intoxication on Bunce's HGN test. The HGN test, developed by the U.S. Department of Transportation's National Highway Traffic Safety Administration (NHTSA), measures the effect of alcohol consumption on the central nervous system. *Murphy*, 451 N.W.2d at 157

(explaining despite its "pretentiously scientific name" the test simply measures the involuntary jerking of the eyeball"). Trooper Papin testified that, according to his training, the HGN test has been determined by testing in police departments across the nation to be the most accurate of the field tests to indicate a BAC exceeding .08.

Trooper Papin testified Bunce only scored one clue for intoxication on each of the other two field sobriety tests, which constituted passing scores. On cross-examination, the trooper said he "couldn't give a solid reason" why Bunce passed the walk-and-turn and one-leg-stand tests, but suggested: "Usually people who are in good condition have good balance generally." Bunce asserts on appeal the State should not be able to "overlook" his passing scores on two of the field sobriety tests, and suggests the HGN test results should have been considered a "false positive."

Bunce's position has not been universally rejected. The Kansas Court of Appeals recently discussed the "contentious issue" of whether police officers can form reasonable grounds to believe a suspect is driving under the influence when he successfully completes walk-and-turn and one-leg-stand tests, without reaching a resolution. *See Bixenman*, 307 P.3d at 220; *see also Lefebvre v. State*, 19 A.3d 287, 297–300 (Del. 2011) (Steele, C.J., dissenting) (objecting to majority's suggestion that "passed field sobriety tests can be ignored under the 'totality' test if, before testing, the police might have had sufficient alternative evidence to constitute probable cause").

But we find more persuasive authority in the majority opinion in *Lefebvre*, as well as decisions from Alaska, Minnesota, Pennsylvania, and Tennessee.

The majority of the Delaware appeals court rejected Lefebvre's argument that "her having passed every properly administered field sobriety test (other than the HGN and PBT, which the Superior Court determined were not properly administered) constitutes 'overwhelming evidence' that she was not impaired by alcohol." *Lefebvre*, 19 A.3d at 294. The majority held "[f]ield tests results that are either favorable to the driver or mixed do not . . . negate the probable cause to arrest that existed before the field tests began." *Id.* at 295 (noting NHTSA's findings that "an individual may pass field tests and still be under the influence of alcohol").

In *State v. Grier,* 791 P.2d 627, 628 (Alaska Ct. App. 1990), the court reversed the suppression of a motorist's breath test. During the early morning hours, an Alaska state trooper stopped the motorist for speeding; the motorist smelled of alcohol, had bloodshot eyes, and admitted having consumed "two or three beers." But the motorist was able to satisfactorily complete four out of five field sobriety tests, only failing the HGN test. Like Bunce, Grier pointed to his successful performance on the other field sobriety tests and argued the HGN test was subject to "false positives, *i.e.* identifying men and women as intoxicated who are not." *Grier*, 791 P.2d at 632 n.3. The Alaska court explained "probable cause is established even though the facts known to the officer could also be reconciled with innocence." *Id.*

In *State v. Grohoski*, 390 N.W.2d 348, 350 (Minn. Ct. App. 1986), the appellate court considered the prosecution's appeal. Grohoski was stopped for speeding on his motorcycle, had bloodshot and watery eyes, emitted a strong odor of alcohol, and admitted to drinking "a few" alcoholic beverages. The trial

court found Grohoski passed all of the field sobriety tests and suppressed the breath test results. The appellate court reversed, finding the trial court improperly focused on the absence of indicia of intoxication, stating: "A DWI suspect need not exhibit every known sign of intoxication in order to support a determination of probable cause." *Grohoski*, 390 N.W.2d at 351. Similarly, in *Craze v. Commonwealth*, 533 A.2d 519, 521 (Pa. Commw. Ct. 1987), the appellate court determined an officer had reasonable grounds to order a breathalyzer test despite the fact the motorist successfully completed the heel-to-toe field sobriety test; the motorist acted in a disorderly manner, had bloodshot eyes, smelled of alcohol, and admitted drinking one beer.

In *State v. Bell*, ___ S.W.3d ___, 2014 WL 644502, (Tenn. 2014), the trial court suppressed evidence obtained following the motorist's arrest, finding the motorist "did pretty doggone good on the field sobriety tests." On the prosecution's appeal, the court of criminal appeals held once the officer had witnessed the defendant's success on a battery of field sobriety tests, there was not probable cause to arrest based on the totality of circumstances available to the officer. *Bell*, __ S.W.3d at ___. On further review, the state supreme court held "performance on field sobriety tests is but one of the many factors officers should consider when deciding whether to arrest a motorist for DUI." *Id.* at ___ (finding Bell's "significant moving violation" coupled with the smell of alcohol and his admission to having imbibed "more than [he] should have" amounted to probable cause for an arrest).

We reject Bunce's implication that reaching a reasonable-ground determination under section 321J.5 requires a mathematical calculation where a

court must tally the field sobriety test clues showing impairment against the clues not showing impairment. The conditions leading to a finding of reasonable grounds or probable cause "are not technical they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *See State v. Dawdy*, 533 N.W.2d 551, 555–56 (Iowa 1995).

Bunce's speeding in the early morning hours, his hesitation to speak with the trooper, his bloodshot eyes, his odor of alcohol, his admission to drinking, his failure of the HGN test, along with slight clues of impairment on the walk-and-turn and one-leg-stand tests, provided reasonable grounds for seeking a PBT under section 321J.5. *See State v. Wilkes*, 756 N.W.2d 838, 845 (Iowa 2008).

**B.     Did the trial court mistakenly find the trooper had probable cause for Bunce's arrest?**

Bunce also challenges his arrest, claiming no probable cause existed without the PBT results. It is not necessary to decide if probable cause for an arrest existed without the PBT results because, as discussed above, the trooper had reasonable grounds to request a breath sample under section 321J.5. Bunce's PBT result—showing a BAC of .143—constituted a reasonable basis to invoke implied consent and to place the defendant under arrest for operating while intoxicated. Iowa Code § 321J.6; *see Wilkes*, 756 N.W.2d at 845. The district court properly overruled Bunce's motion to suppress.

**AFFIRMED.**