*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1763**

Harrison David Awe, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed August 4, 2014
Reversed
Chutich, Judge**

Stearns County District Court
File No. 73-CV-10-6493

James M. Ventura, Wayzata, Minnesota (for respondent)

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Rodenberg, Judge; and Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CHUTICH**, Judge

The Minnesota Commissioner of Public Safety challenges the district court's suppression of a breath test taken by respondent Harrison David Awe and the resulting rescission of the revocation of Awe's license. Because Awe voluntarily consented to the test under the Minnesota Supreme Court's holding in *State v. Brooks*, we reverse. 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

## FACTS

On July 3, 2010, at approximately 3:40 a.m., St. Joseph Police Officer Matt Johnson stopped a car because it did not have a rear license plate or temporary permit properly displayed. Officer Johnson identified the driver of the car as respondent Harrison Awe. While speaking to Awe, the officer noticed that Awe had "bloodshot watery eyes" and also smelled "the odor of an alcoholic beverage coming from the vehicle." Officer Johnson asked Awe if he drank any alcoholic beverages before driving, and Awe said no. The officer then asked Awe to take a preliminary breath test (PBT), and the PBT detected the presence of alcohol. Officer Johnson again asked Awe if he had been drinking alcohol that night, and Awe responded affirmatively.

Officer Johnson asked Awe to perform field sobriety tests and the horizontal gaze nystagmus test. During the field sobriety tests, Awe "swayed while balancing and used his arms for balance" and "did not touch heel to toe on every step and made an improper turn." The officer observed clues of impairment while performing the horizontal gaze

nystagmus test on Awe, and Awe agreed to take another PBT. The second PBT revealed an alcohol concentration of .105.

Officer Johnson then arrested Awe for driving under the influence and read him the implied-consent advisory. Awe said that he understood the advisory. When the officer asked Awe if he would like to consult with an attorney, Awe replied, "[N]o, sir." He then consented to take a breath test, which revealed an alcohol concentration level of .09.

Because Awe's alcohol concentration was over the legal limit, the Minnesota Commissioner of Public Safety (commissioner) revoked his driver's license. Awe petitioned for judicial review and moved to suppress evidence of the breath test under *Missouri v. McNeely*, 133 S. Ct. 1552 (2013). In July 2013, the district court granted Awe's motion to suppress and rescinded the revocation of his driver's license. This appeal followed.

## D E C I S I O N

The commissioner asserts that the district court erred when it found that Awe did not voluntarily consent to the breath test. The commissioner contends, and we agree, that Awe's consent was voluntary under the supreme court's decision in *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

"When the facts are not in dispute, the validity of a search is a question of law subject to de novo review." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004). In reviewing the constitutionality of a search, "we independently analyze the undisputed facts to determine whether evidence resulting from the search

3

should be suppressed." *Id.* A district court's conclusions of law are not overturned "absent erroneous construction and application of the law to the facts." *Id.*

The U.S. Constitution and the Minnesota Constitution guarantee all persons the right to be free from unreasonable searches. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Taking a sample of a person's breath is a search under the Fourth Amendment and requires a warrant or an exception to the warrant requirement. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616–17, 109 S. Ct. 1402, 1412–13 (1989); *State v. Netland*, 762 N.W.2d 202, 212 (Minn. 2009), *abrogated in part by McNeely*, 133 S. Ct. 1552, *as recognized in Brooks*, 838 N.W.2d at 567.

Consent is an exception to the warrant requirement. *Brooks*, 838 N.W.2d at 568. In an implied-consent case, the commissioner has the burden of proving by a preponderance of the evidence that a search was constitutional. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011); *see Johnson v. Comm'r of Pub. Safety*, 392 N.W.2d 359, 362 (Minn. App. 1986).

In *Brooks*, the Minnesota Supreme Court held that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." 838 N.W.2d at 570. A warrant is not necessary for police officers to test someone's breath, blood, or urine if the person consents to the search, but the person must give consent "freely and voluntarily" based on a preponderance of the evidence. *Id.* at 568. To determine whether someone has voluntarily consented to a search in the implied-consent context, we must consider the totality of the circumstances, "including the nature of the encounter, the kind of person the defendant is, and what was

4

said and how it was said." *Id.* at 569 (quoting *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994)).

The supreme court examined the totality of the circumstances surrounding Brooks's consent to chemical testing, considering both his susceptibility to coercion and his ability to consult with counsel before making the decision. *Id.* at 570–72. In three separate driving incidents, Brooks was validly stopped, police officers complied with the requirements of the implied-consent statute, and Brooks consented to chemical testing after consulting with his attorney. *Id.* at 565–66, 569–70. The court determined that "nothing in the record suggests that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* at 571. The supreme court found Brooks's consent to be voluntary under these circumstances. *Id.* at 572.

Here, the district court, which did not have the benefit of *Brooks* when it ruled, rescinded the revocation of Awe's driver's license because it concluded that he did not consent to the breath test. The district court stated in its order, "[Awe] was coerced into taking the test by the threat of criminal sanctions in the Minnesota Implied Consent Advisory" and that "this threat was sufficient to invalidate the free and voluntary nature of the consent." Based on the holding in *Brooks*, we reverse the district court's ruling that Awe did not validly consent to the breath test and restore the revocation of Awe's license.

The record, which is not in dispute on appeal, demonstrates that Officer Johnson complied with all of the statutory requirements of the implied-consent law, and the

totality of the circumstances shows that Awe voluntarily consented to the breath test. The officer stopped Awe because his car did not have a rear license plate or temporary permit properly displayed. After approaching the car, Officer Johnson saw that Awe had bloodshot, watery eyes and smelled the odor of alcoholic beverages coming from the car. After being asked twice, Awe admitted to drinking alcohol before driving. Awe then struggled with balancing himself and following directions during field sobriety testing and showed clues of impairment on the horizontal gaze nystagmus test. Awe's PBT showed a result of .105.

After arresting Awe, Officer Johnson properly read him the implied-consent advisory and asked Awe if he wanted to speak to an attorney. Awe declined to speak to an attorney and agreed to take a breath test. Nothing in the record suggests that Awe was subjected to any type of coercion, extended questioning, or prolonged custody by the police officer. Based on the totality of the circumstances, we hold that Awe voluntarily consented to the breath test and that a search warrant was not required.

**Reversed.**