*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0380**

Randall Frank Larch, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed October 20, 2014
Affirmed
Johnson, Judge**

Aitkin County District Court
File No. 01-CV-13-973

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, Rory Mattson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The commissioner of public safety revoked Randall Frank Larch's driver's license after he was arrested for driving while impaired and a breath test showed that his alcohol concentration exceeded .08. Larch sought judicial review of the commissioner's

revocation. The district court denied his petition to rescind the revocation on the ground that Larch voluntarily consented to the breath test. We affirm.

## FACTS

Just after midnight on September 21, 2013, State Trooper Glen Bihler stopped Larch for speeding in Aitkin County. Trooper Bihler detected the odor of alcohol on Larch's breath and noticed that his speech was slurred and that he had bloodshot and watery eyes. Larch admitted that he had drunk four or five beers. Trooper Bihler asked Larch to perform field sobriety tests and to submit to a preliminary breath test. Those tests indicated that Larch was impaired.

Trooper Bihler arrested Larch for fourth-degree driving while impaired. Trooper Bihler read Larch the implied-consent advisory. Trooper Bihler transported Larch to the county jail, where he repeated the advisory. When Larch indicated that he wished to speak with an attorney, Trooper Bihler provided him with a telephone and a telephone book. After 30 minutes, Larch had not contacted an attorney. Trooper Bihler discontinued Larch's telephone time. Larch then told Trooper Bihler that he would submit to a breath test. The result of the breath test was an alcohol concentration of .12.

The commissioner of public safety revoked Larch's driver's license. Larch petitioned the district court for judicial review of the commissioner's revocation. In a memorandum accompanying his petition, Larch argued that the breath-test results should be suppressed because he did not provide valid consent to the breath test. The district court held a hearing on the petition in November 2013. Larch testified that Trooper Bihler told him that "Minnesota law requires you to take a test" and that "refusal to take a

2

test is a crime." Larch further testified that he "made a choice not to break the law" when he submitted to the test. The district court found that, under the totality of the circumstances, Larch validly consented to the breath test. Accordingly, the district court denied Larch's petition and sustained the revocation of his license. Larch appeals.

## DECISION

Larch argues that the district court erred by finding that his consent to the breath test was not coerced and, thus, was valid. This court applies a clear-error standard of review to a district court's finding that a driver validly consented to a breath test. *Jasper v. Commissioner of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. A test of a person's breath constitutes a search for purposes of the Fourth Amendment. *Skinner v. Railway Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989); *State v. Netland*, 762 N.W.2d 202, 212 (Minn. 2009), *abrogated in part by Missouri v. McNeely*, 133 S. Ct. 1552, 1568 (2013), *as recognized in State v. Brooks*, 838 N.W.2d 563, 567 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). As a general rule, a search requires either a warrant or an exception to the warrant requirement, such as the person's consent or the existence of exigent circumstances. *McNeely*, 133 S. Ct. at 1558; *Brooks*, 838 N.W.2d at 568. The

exigency created by the dissipation of alcohol in a suspect's body is not a *per se* exception to the warrant requirement. *McNeely*, 133 S. Ct. at 1568. But the consent of the person whose breath is tested is an exception to the warrant requirement, in which case a police officer is not required to obtain a warrant. *Brooks*, 838 N.W.2d at 568. In an implied-consent case, the commissioner of public safety bears the burden of showing by a preponderance of the evidence that the driver voluntarily consented to chemical testing. *Johnson v. Commissioner of Pub. Safety*, 392 N.W.2d 359, 362 (Minn. App. 1986).

In this case, the district court found that, under the "totality of the circumstances," Larch "voluntarily consented to the breath test, and his consent was not coerced but was voluntarily given." The district court found, "By reading the implied consent advisory to [Larch], it was made clear that there was a choice in whether to submit to a test, especially considering [Larch's] prior experiences with intoxicated driving arrests." The district court reasoned that Larch's consent was voluntary in light of *Brooks*, which held that a finding of voluntariness is supported by evidence that a person has a choice to either consent to or refuse a breath test. *See Brooks*, 838 N.W.2d at 572.

The supreme court held in *Brooks* that a driver's consent is not coerced as a matter of law simply because the driver would face criminal consequences if he were to refuse testing. 838 N.W.2d at 570. Instead, "whether consent is voluntary is determined by examining the totality of the circumstances." *Id.* (quotation omitted). The relevant circumstances include "'the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.'" *Id.* at 569 (quoting *State v. Dezso*, 512 N.W.2d

4

877, 880 (Minn. 1994)). When considering the nature of the encounter, a court should ask how the police came to suspect the driver was under the influence, whether police read the driver the implied-consent advisory, and whether he had an opportunity to consult with an attorney. *Id.* The supreme court identified three primary reasons why Brooks's consent was voluntary and not coerced. First, Brooks was read the implied-consent advisory, which "made clear to him that he had a choice of whether to submit to testing." *Id.* at 572. The supreme court reasoned that "[w]hile an individual does not necessarily need to know he or she has a right to refuse a search for consent to be voluntary, the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.* (citation omitted). Second, Brooks had "the ability to consult with counsel," *id.* at 572, which the supreme court reasoned supports the conclusion that a defendant made a voluntary decision. *Id.* at 572. Third, Brooks "was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody." *Id.* at 571 (citing *State v. High*, 287 Minn. 24, 27-28, 176 N.W.2d 637, 639 (1970)). The supreme court reasoned that "nothing in the record suggests that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* (quotation marks omitted).

Larch contends that the district court improperly applied *Brooks* because the facts of his case are factually distinguishable in two respects. First, Larch contends that, unlike the appellant in *Brooks*, he did not actually confer with counsel because he was unable to contact an attorney within the allotted 30 minutes. In *Brooks*, the appellant actually

5

consulted with an attorney before consenting to a test. *Id.* at 570. But the supreme court noted merely that Brooks had "the ability to consult with counsel." *Id.* at 572. The supreme court did not reason that actual consultation was essential but, rather, stated that an actual consultation "reinforces the conclusion that his consent was not illegally coerced." *Id.* at 571. In any event, because a proper analysis considers the totality of the circumstances, the *Brooks* opinion cannot be read to say that the absence of a consultation with an attorney necessarily renders a driver's consent involuntary.

Second, Larch contends that the trooper coerced his consent by telling him that he was "required" to take a breath test. The record reveals that the trooper read Larch the implied-consent advisory that is required by statute. *See* Minn. Stat. § 169A.51, subd. 2 (2012). The supreme court in *Brooks* held that the advisory "made clear to [Brooks] that he had a choice of whether to submit to testing" and that the existence of a choice "supports a finding of voluntariness." 838 N.W.2d at 572 (citation omitted). Similarly, Larch testified that he "made a *choice* not to break the law." (Emphasis added.) Accordingly, Larch's testimony supports the district court's finding that his consent was voluntary. Nothing in the record suggests that Larch "was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *See id.* at 571 (quotation marks omitted).

In sum, the district court did not clearly err by finding that Larch voluntarily consented to the breath test. In light of that finding, the district court properly denied Larch's petition to rescind the revocation of his driver's license.

**Affirmed.**

6