STATE of Alaska, Appellant,

v.

James BURDINE, Appellee.

No. A–678.

Court of Appeals of Alaska.

April 19, 1985.

Harry L. Davis, Dist. Atty., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

Kenneth J. Goldman, Birch, Horton, Bittner, Pestinger & Anderson, Fairbanks, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

SINGLETON, Judge.

The State of Alaska appeals an order of the superior court dismissing an indictment charging James Burdine with robbery and second-degree murder in connection with the death of a Fairbanks cabdriver. AS 11.41.–500(a)(1); AS 11.41.110(a)(3). We reverse.

On July 26, 1984, at 6:00 p.m., a Fairbanks cabdriver, Alvin Starkey, was found in his cab dead from a knife wound. In addition, his house had been burglarized and a shotgun stolen. The police concluded that at least two people were involved in the killing based upon the presence of two sets of footprints at the scene: one a set of Vibram soles and one a set of smooth soles. The police also concluded, based on dust patterns near the scene of the killing, that the assailant with Vibram soles was wearing corduroy pants. Due to the large amount of blood at the scene, they also believed that the suspects might have blood on them.

The police began to suspect David McGill of the homicide based on information from the victim's brother. They also learned from the cab company's dispatcher that on the day of the killing, at approximately 4:00 p.m., someone had called the cab company asking that Starkey pick him up at a restaurant and drop him off at a campground. A witness at the restaurant said that two men had come in and made a telephone call and that shortly thereafter a cab had arrived for them. The witness described the

two men who had made the call: one was a white male, heavy set, dark complected, bearded, and shorter than his companion; the other was tall, slender, with light brown or blonde hair. One of them, the tall, slender man, was younger than his companion.

The police broadcasted a locate for David McGill and his companion. A photograph of McGill and a description of the two were sent to the Fairbanks International Airport. At about 12:15 a.m. on July 27, an Alaska Airlines employee contacted airport security with the information that two men matching the general description of the suspects were at the Alaska Airlines counter and were checking weapons through. At about 12:30, David Muston, an airport police officer, accompanied by two other airport police officers, approached the two men in the Alaska Airlines boarding area. He explained that they matched a description of individuals wanted by the city police and asked if they would mind waiting until someone could come and verify the identification. McGill said that they would wait. Muston asked them for identification but they had none; in addition, each carried the other's airline ticket. The tickets were for an out-of-state flight. At some point in this encounter, McGill and his companion, James Burdine, were patted down.

At approximately 12:49 a.m., Detective Nielsen of the Fairbanks Police Department arrived, accompanied by another city police officer and approximately six state troopers. Nielsen testified that he noticed that the two fit the general description given by the witness at the restaurant. McGill was short, heavy set with a beard, and wearing Vibram-soled boots and corduroy pants. He had two small spots that appeared to be blood on his shirt. Burdine was tall, skinny, wearing flat-soled shoes and had a small spot of what appeared to be blood on his shirt as well. According to Muston, Burdine and McGill were frisked when Detective Nielsen arrived; Detective Nielsen testified that he had not observed them being frisked. Nielsen asked Burdine and McGill if they would be willing to go downtown to discuss an investigation into a matter that occurred downtown. He told them that he would get them on the next available flight out of Fairbanks if it turned out that they were not involved. Burdine and McGill said that they would go downtown. At this point, there were about six state troopers, three airport security personnel, as well as Detective Nielsen in the waiting area.

Detective Nielsen led Burdine and McGill out of the airport with other officers behind them. The two suspects were not handcuffed as they left the airport. Because he did not have cages in his car and wanted to keep the suspects separated, Detective Nielsen asked the troopers to take the two to the station and they agreed. The troopers handcuffed Burdine and McGill during the transfer; Detective Nielsen testified that he understands that this is the troopers' normal policy. The handcuffs were removed immediately when Burdine and McGill arrived at Detective Nielsen's office. Burdine and McGill were questioned separately. They each confessed, and were placed under arrest.

Superior Court Judge Warren W. Taylor found that Burdine and McGill were the subjects of an investigatory stop by airport security police at the airport. He further found that their transportation to the Fairbanks police station transformed the investigatory stop into an arrest. Finally, he concluded that the police had probable cause to arrest McGill at the airport but lacked probable cause to arrest Burdine. Judge Taylor therefore found that Burdine was the victim of an unlawful arrest and suppressed Burdine's confession.

■ The state apparently concedes for purposes of argument that Burdine and McGill were subjected to an investigatory stop at the airport. The state argues, however, that the investigatory stop terminated when Detective Nielsen arrived at the airport, and that Burdine and McGill voluntarily accompanied the police to the police station and voluntarily participated in the interrogation that took place thereafter. *See Henry v. State,* 621 P.2d 1, 3 (Alaska

1980); *Castillo v. State*, 614 P.2d 756 (Alaska 1980); *State v. Cassell*, 602 P.2d 410 (Alaska 1979). The trial court's finding to the contrary is not clearly erroneous. Where a person is subjected to an investigatory stop and thereafter agrees to go to the police station to continue interrogation, it is, at the very least, a question of fact for the trial judge whether the suspect's consent is free and voluntary or the product of duress or coercion, express or implied. *See, e.g., Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Model Code of Prearraignment Procedure* § 120.5(2) (1975); 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.1 (1978 & Supp. 1984).

Judge Taylor also concluded that the police lacked probable cause to arrest Burdine at the airport. He concluded that the police had probable cause to arrest McGill, and that Burdine minimally matched the description of the second man at the restaurant and at the scene of the victim's death, but concluded that this evidence, standing alone, was not sufficient to establish probable cause. Judge Taylor apparently concluded that the evidence against McGill had to be disregarded entirely to avoid the risk that Burdine would be arrested solely on the basis of guilt by association. In this regard, we believe Judge Taylor was in error. While Burdine's presence with McGill at the airport, standing alone, would not have justified Burdine's arrest no matter how strong the evidence against McGill, it does not follow that the evidence against McGill was irrelevant to a finding of probable cause to arrest Burdine. Knowledge that two men had participated in the killing of Starkey, that Burdine generally matched the description of one of those men and that McGill was probably the other, and that Burdine and McGill were in each other's

company at the Fairbanks airport approximately eight hours after the killing, planning to leave the state, established probable cause to arrest Burdine as a matter of law. *Dunn v. State*, 653 P.2d 1071, 1077 (Alaska App.1982).[1] 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.2 (1978 & Supp.1984).

The judgment of the superior court is REVERSED.

---

1. This court in *Dunn* stated:
   Accordingly, it is well established that probable cause for arrest will exist when facts and circumstances known to a police officer would justify a man of reasonable caution in believing that an offense had been or was

being committed and that the person to be arrested is the one who committed it. *Schmid v. State*, 615 P.2d 565, 574 (Alaska 1980).

658 P.2d at 1077.