**STATE of Alaska, Petitioner,**

v.

**Timothy GRIER, Respondent.**

**No. A–3050.**

Court of Appeals of Alaska.

May 4, 1990.

Karla Taylor–Welch, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Douglas B. Baily, Atty. Gen., Juneau, for petitioner.

Geoffrey B. Wildridge, James H. Cannon, Asst. Public Defenders, Fairbanks, and John B. Salemi, Public Defender, Anchorage, for respondent.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Timothy Grier was charged with driving while intoxicated (DWI) in violation of AS 28.35.030(a), and with minor consuming alcoholic beverages in violation of AS 04.16.-050. District Court Judge Christopher E. Zimmerman granted Grier's motion to suppress the results of a breathalyzer test, blood test, and videotape on the grounds that the arresting officers lacked probable cause to arrest Grier for driving while intoxicated. The state petitioned for review, asking us to determine the significance of the horizontal gaze nystagmus (HGN) test in determining probable cause to arrest for driving while intoxicated. We granted review because this is a case of first impression which presents significant issues of state-wide importance to law enforcement. *See* Alaska R.App.P. 402(a)(1).[1]

On March 27, 1988, at approximately 2:00 a.m., Alaska State Trooper David Hudson was on routine patrol when he observed a vehicle speeding approximately 70 m.p.h. in a 55 m.p.h. zone. Trooper Hudson pursued the vehicle but was unsuccessful in overtaking it. He radioed ahead for assistance to Alaska State Trooper John Roberts, who was also on routine patrol in the area. Trooper Roberts stopped the vehicle. Trooper Hudson arrived almost simultaneously and contacted the driver who identified himself as Timothy Grier. Trooper Hudson noticed that Grier had a strong odor of alcohol about his person, that his eyes were bloodshot and watery, and that he had difficulty retrieving his vehicle's registration to show the officer. Grier apparently produced his driver's license without difficulty. Trooper Hudson testified that he then asked Grier to step out of his car and come back to the patrol car. According to Trooper Hudson, when Grier stepped out of his vehicle, some tools fell to the ground and Grier seemed "very unsteady" as he bent over to pick them up. Trooper Hudson noticed that the road was covered by a frost glaze. Trooper Hudson testified that Grier was "real light footed" and "real bouncy" as he walked back to the patrol car. In Trooper Hudson's view, Grier's manner of walking was "very unusual." Grier was very talkative and admitted to the officer that he had been drinking, conceding that he had had two to three beers. Trooper Hudson also testified that Grier appeared to be confused. Grier told Trooper Hudson that he had been at a drinking establishment called The Roof. When Trooper Hudson explained to him that he could not have come from The Roof because they had just driven by that bar in their vehicles, Grier said he had been at the Golden Eagle Saloon in Ester. Trooper Hudson then administered five field sobriety tests—the alphabet test; the counting test; the walk-and-turn test; the one leg stand test; and the horizontal gaze nystagmus (HGN) test. Grier passed all of the tests satisfactorily with the exception of the HGN test.

---

**1.** Judge Coats dissented from the decision to    grant the state's petition for review.

Trooper Hudson testified that he has had contact with close to a thousand intoxicated people during his five-year career as a police officer, and that he had made sixty or seventy arrests for driving while intoxicated. He testified that he had been trained on the administration of the HGN test as part of an advanced field sobriety test training course at the police academy in Sitka. Trooper Hudson noted that he had administered the HGN "several hundred times."

The Supreme Court of Arizona described the HGN test in *State v. Superior Court*, 149 Ariz. 269, 271, 718 P.2d 171, 173 (1986) as follows:

In the HGN test the driver is asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision towards his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with the other eye. By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus [an involuntary jerking of the eyeball] at maximum deviation and (3) onset of the nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content (BAC) exceeds the legal limit of .10 percent.

Trooper Hudson testified that Grier failed the HGN test, accumulating a maximum failing score. Grier was transported to the trooper's station where an Intoximeter exam revealed a blood alcohol level of .145. At Grier's request, he was transported to a hospital where a sample of his blood was drawn in order to enable an independent test. A chemical test of a sample of Grier's blood indicated a blood alcohol level of .115.

Grier brought a motion to suppress the results of the chemical test of his blood, the Intoximeter test, and the videotape taken by the troopers during the testing process. He pointed out that he had successfully passed all of the field sobriety tests except the HGN test. He argued that the HGN test had not obtained sufficient credibility within the relevant scientific community to support a finding of probable cause to arrest, in the absence of corroboration from other field sobriety tests. Judge Zimmerman held an evidentiary hearing where Troopers Hudson and Roberts testified to Grier's appearance and actions at the time of his arrest. Alaska State Trooper Leonard Coile testified as an expert witness concerning how officers are trained to learn how to perform the HGN test. Trooper Coile was a "DWI instructor" for five and one-half years at the trooper training academy in Sitka.

Dr. Scott Emery, a physician specializing in neurology, testified as an expert on the HGN. Dr. Emery testified that it is generally accepted in his profession that the HGN test is a reliable screening test for intoxication. According to Dr. Emery, the test is also very easy to learn and administer. Dr. Emery reviewed the materials used by Trooper Coile to train officers to administer the test and concluded that those training materials would enable the troopers to do "a very good job" of administering the HGN test so as to obtain reliable results in a roadside situation. Dr. Emery testified that of the available field sobriety tests, the HGN test is a very sensitive indicator of intoxication.

Dr. Michael Propst, a physician specializing in pathology, testified as an expert on behalf of the state. He testified that people can practice traditional field sobriety tests such as the walk-and-turn test to learn how to pass them, but that the same cannot be said for the HGN test because it is an involuntary objective test. Dr. Emery also testified that the HGN test is not under voluntary control.

At the evidentiary hearing, the state also submitted for the court's consideration scientific studies discussing the validity of the HGN test as a means of determining intoxication. *See, e.g.*, M. Burns & H. Moskowitz, *Psychophysical Tests for DWI Arrests* (1977) (prepared for the U.S. Dept. of Transportation, Contract No. DOT–HS–5–01242); V. Tharp, M. Burns & H. Moskowitz, *Development and Field Test of Psy-*

*chophysical Test for DWI Arrests* (1981) (prepared for U.S. Dept. of Transportation, Contract No. DOT–HS–8–01970); G. Goding & R. Dobie, *Gaze Nystagmus and Blood Alcohol* (1985) (unpublished study, available from Dr. Dobie, Dept. of Otolaryngology, University of Washington).

In a written decision, Judge Zimmerman suppressed all evidence obtained after Grier's arrest. Judge Zimmerman found that the HGN test is sufficiently reliable to enable an administering officer to testify about the results and his observations. However, the test is not accurate enough to permit the officer to give an opinion about the subject's specific blood alcohol level. The court further found that the officer's training in the instant case was sufficient to enable him to give testimony about the correlation between the HGN test results and alcohol consumption. The court concluded, however, that Trooper Hudson erred in arresting Grier for driving while intoxicated based only on the results of the HGN test, where Grier had successfully passed all of the other field sobriety tests. In Judge Zimmerman's view, the fact that a person failed the HGN test, standing alone, is not sufficient to establish probable cause to arrest that person for driving while intoxicated.

## DISCUSSION

At the outset, it is important to stress that we are considering a narrow issue in this case. Does a police officer have probable cause to arrest a driver for driving while intoxicated where the driver is stopped for speeding; fails to pass a HGN test, but passes four other field sobriety tests; and exhibits several signs of intoxication such as the odor of alcohol, watery and bloodshot eyes, unsteady balance, "bouncy" gait, confusion, talkativeness, and difficulty in showing vehicle registration?

We are not deciding whether the results of an HGN test are admissible in evidence at trial either as independent evidence of intoxication or to corroborate the results of a chemical test of a subject's breath or blood. *See Superior Court,* 718 P.2d at

182; *People v. Vega,* 145 Ill.App.3d 996, 99 Ill.Dec. 808, 811, 496 N.E.2d 501, 504 (1986). Nor are we deciding whether probable cause to arrest, as opposed to a reasonable suspicion of driving while intoxicated, is necessary before an officer may administer field sobriety tests to a detainee. *See Superior Court,* 718 P.2d at 175; *State v. Lamme,* 19 Conn.App. 594, 563 A.2d 1372, 1374–76 (1989), *cert. granted,* 212 Conn. 820, 565 A.2d 541 (1989); *State v. Golden,* 171 Ga.App. 27, 318 S.E.2d 693, 695–96 (1984) (All three cases hold that reasonable suspicion of intoxication is a sufficient basis for requiring operator of motor vehicle to perform field sobriety tests.) *But see People v. Carlson,* 677 P.2d 310, 317 (Colo.1984) (probable cause required for field sobriety tests). Finally, we are not deciding whether probable cause to arrest a person for minor consuming alcohol permits a chemical test of that person's blood or breath as a search incident to arrest for that offense.

The fourth amendment to the United States Constitution and article 1, section 14, of the Alaska Constitution bar unreasonable searches and seizures. A warrantless search is *per se* unreasonable unless it falls within an exception to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Deal v. State,* 626 P.2d 1073, 1078 (Alaska 1980).

A search of a person incident to an arrest is a recognized exception to the search warrant requirement. *United States v. Robinson,* 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973); *McCoy v. State,* 491 P.2d 127, 130–31 (Alaska 1971). A breath test constitutes a search. *Burnett v. Anchorage,* 634 F.Supp. 1029, 1035–37 (D.Alaska 1986), *aff'd,* 806 F.2d 1447 (9th Cir.1986); *Leslie v. State,* 711 P.2d 575, 576–77 (Alaska App.1986). Such a search may be performed without violating constitutional limitations incident to an arrest for driving while intoxicated. *Id.* at 577. Alaska Statute 28.35.031 sets out Alaska's implied consent statute and provides that a person lawfully arrested for driving while intoxicated consents to a chemical test of his blood or breath so long as the officer

arresting him had reasonable grounds to believe that the person was driving a motor vehicle in this state while intoxicated. We have interpreted this language as requiring probable cause to arrest. *Id.* Consequently, if Trooper Hudson did not have probable cause to arrest Grier for driving while intoxicated, the trial court properly sustained Grier's motion to suppress the results of the chemical test of his blood and breath.

■ Probable cause to arrest is a mixed question of fact and law containing three sub-questions. The first question involves the historical facts. Since Grier prevailed in the court below, we will consider the record in the light most favorable to him. *See Dunn v. State,* 653 P.2d 1071, 1077 (Alaska App.1982). We will only reverse the trial court's decision on historical facts if it is clearly erroneous. The other two questions involve the applicable legal rule and the application of that legal rule to the facts. On these questions we exercise our independent judgment. *See Ker v. California,* 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963); *Brinegar v. United States,* 338 U.S. 160, 171, 69 S.Ct. 1302, 1308, 93 L.Ed. 1879 (1949), *reh'g. denied,* 338 U.S. 839, 70 S.Ct. 31, 94 L.Ed. 513 (1949); *United States v. Alfonso,* 759 F.2d 728, 741 (9th Cir.1985); *United States v. McConney,* 728 F.2d 1195, 1199–1205 (9th Cir.1984), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). *Cf. City of Nome v. Ailak,* 570 P.2d 162, 170 (Alaska 1977) (a civil case for false arrest and false imprisonment by the police in which the court held that where the historical facts relevant to the determination of whether the officers had probable cause to arrest are not disputed, the question is one of law under the standards developed in *McCoy,* 491 P.2d at 130).

Probable cause for an arrest exists where a police officer is aware of facts and circumstances, based on reasonably trust-

worthy information, which are " 'sufficient in themselves to warrant a [person] of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar,* 338 U.S. at 175–76, 69 S.Ct. at 1311 (quoting *Carroll v. United States,* 267 U.S. 132, 165, 45 S.Ct. 280, 289, 69 L.Ed. 543 (1925)). *See Schmid v. State,* 615 P.2d 565, 574 (Alaska 1980); *McCoy,* 491 P.2d at 129–30; *State v. Burdine,* 698 P.2d 1216, 1218 n. 1 (Alaska App.1985); *Dunn,* 653 P.2d at 1077.[2]

■ We agree with the trial court that the HGN test is sufficiently reliable to be considered with other field sobriety tests in determining probable cause. *See Superior Court,* 718 P.2d at 176–78. Dr. Emery's testimony established that the test is useful in determining intoxication. Dr. Emery testified that a young healthy person could, despite a .10 alcohol concentration in his blood, successfully perform the other field sobriety tests, masking his intoxication. We disagree with the trial court's ultimate conclusion that the facts known to Trooper Hudson were insufficient to establish probable cause to arrest Grier. It is important to stress that "[i]n dealing with probable cause, ... we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent [people], not legal technicians, act." *Brinegar,* 338 U.S. at 175, 69 S.Ct. at 1310.

Trooper Hudson was entitled to rely on his experience and training in evaluating the facts presented to him. 1 W. LaFave, *Search and Seizure* § 3.2(c), at 570–75 (2d ed. 1986). Trooper Hudson knew that Grier had failed the HGN test, which is the most accurate of the many field sobriety tests for intoxication. In addition, Trooper Hudson knew that Grier had an odor of alcohol about his person, watery bloodshot eyes, and exhibited some confusion and instability when first approached by Trooper

2. In the court below, Grier argued that before the HGN test could be considered for purposes of establishing probable cause, it would first have to satisfy test of *Frye v. United States,* 293 F. 1013, 1014 (D.C.Cir.1923), which precludes evidence of a new scientific principle or technique until it has attained general acceptance in the relevant scientific community. *See Contreras v. State,* 718 P.2d 129, 134–36 (Alaska 1986). We agree with the Supreme Court of Arizona, that the *Frye* test has no applicability to the issue of probable cause to arrest in deciding a pretrial motion to dismiss. *Superior Court,* 718 P.2d at 174–75.

Hudson. It was not unreasonable for Trooper Hudson to assign more weight to Grier's initial unsteady balance than to his later successful performance of field sobriety tests when Grier knew he was under the officer's observation and that successful performance was necessary to avoid arrest. In summary, applying the historical facts found by the trial court to the legal standard for probable cause, an issue upon which we exercise our independent judgment, we find that there was probable cause to arrest Grier and require that he submit to a chemical test of his breath or blood. The trial court therefore erred in suppressing the evidence of those chemical tests.

The judgment of the district court is REVERSED.[3]

**3.** Grier's primary argument in support of the trial court's finding regarding probable cause is that the HGN test is subject to false positives, *i.e.,* identifying men and women as intoxicated who are not. Bearing in mind Grier's successful performance of the other field sobriety tests, he vigorously argues that under the totality of the circumstances the facts are as consistent with innocence as they are with guilt. We believe that this argument is answered by the Alaska Supreme Court in *McCoy,* 491 P.2d at 130 (footnote omitted), where the police suspected McCoy of using a stolen credit card to purchase an airline ticket. McCoy was arrested and a subsequent search yielded contraband. The court stated:

Admittedly McCoy could have come by the "R. Jackson" ticket in some perfectly innocent manner. It is also possible that there was more than one person who purchased an "R. Jackson" ticket. Yet these possibilities do not negate the facts and circumstances within the officers' knowledge which supplied the probable cause basis for their belief that McCoy had committed a felony [forgery of an airline ticket]. In order to effect a lawful arrest without a warrant under AS 12.25.030(3), it is not necessary that at the time the arrest is made the peace officer have sufficient evidence for conviction. We think AS 12.25.030(3) must be given a reasonable construction. Thus, we hold that under AS 12.25.030(3) a peace officer, without a warrant, may arrest a person for a felony when the officer has probable cause to believe that a felony has been committed and probable cause to believe that the person committed it.

In our opinion, what the supreme court said about AS 12.25.030(3) applies as well to AS 12.25.030(1) which governs misdemeanor arrests. Where a person of reasonable caution would be justified in the belief that an offense has been committed and the defendant committed it, probable cause is established even though the facts known to the officer could also be reconciled with innocence.