# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 08, 2014

## STATE OF TENNESSEE v. WILLIAM AVERY CRISP

**Appeal from the Circuit Court for Lincoln County**
**No. S1200003     Robert G. Crigler, Judge**

---

### No. M2013-01339-CCA-R3-CD - Filed July 17, 2014

---

The defendant, William Avery Crisp, pled guilty to one count of driving under the influence of an intoxicant ("DUI"), a Class A misdemeanor; one count of vehicular homicide, a Class C felony; one count of vehicular homicide as a proximate result of intoxication, a Class B felony; one count of vehicular assault as a proximate result of intoxication, a Class D felony, and one count of a violation of the open container law, a Class C misdemeanor.  The defendant's guilty pleas reserved four certified questions of law having to do with the trial court's denial of his motions to suppress certain evidence.  He also appeals the trial court's denial of alternative sentencing.  We conclude that the trial court properly determined that there was probable cause to believe the defendant was driving while intoxicated even if he passed the field sobriety tests administered by law enforcement.  The other certified questions are not dispositive of any of the defendant's convictions, and the trial court did not err in sentencing.  Accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER, J., and JOE H. WALKER, III, SP.J., joined.

Raymond W. Fraley, Jr., Fayetteville, Tennessee, for the appellant, William Avery Crisp.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Senior Counsel; Robert J. Carter, District Attorney General; and Ann L. Filer and Drew Wright, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

# FACTUAL AND PROCEDURAL HISTORY

The defendant was involved in a collision in which Wanda Flynn, the driver of the other vehicle, was seriously injured and Tommie Mitchell, the passenger of the other vehicle, was killed.[1]  The collision occurred at approximately 7:52 in the morning, when the defendant crossed the center line of the roadway into the path of an oncoming vehicle. The driver of the other vehicle attempted to avoid the car by steering towards the defendant's lane of travel; the defendant also steered back toward his lane, and the vehicles collided head-on. The defendant was not seriously injured and refused treatment. The driver of the other vehicle suffered severe injuries, and the passenger died eight days later as a result of the accident. The defendant had a blood alcohol content of 0.19 percent. Several witnesses reported seeing the defendant driving recklessly prior to the wreck.

The defendant filed a motion to suppress evidence on the basis that law enforcement officers lacked probable cause to arrest him. He then filed a supplemental motion seeking to suppress the results of the blood test on the alternate ground that the arresting officer did not read him the implied consent form.

At the suppression hearing, Deputy David Miller, the first officer on the scene, testified that he was told by a witness that the defendant was drunk and that he had hidden a whiskey bottle behind the seat of his truck; Deputy Miller recovered the bottle. Deputy Miller also saw a whiskey bottle and beer cans on the roadway next to the open passenger's side door of the defendant's vehicle. The defendant appeared disoriented and appeared to want to leave. Deputy Miller relayed this information to Trooper Ryan Dalton, the arresting officer.

Deputy Wayne Graham of the Lincoln County Sheriff's Department found a partially-consumed half pint bottle of whiskey on the roadway and gave it to Trooper Dalton. Deputy Graham testified that he found the bottle in the middle of the road, strewn next to the open passenger's side door of the defendant's vehicle, along with two or three cans of beer. The defendant told Deputy Graham that the whiskey belonged to his fiancee; Deputy Graham did not recall if he relayed that statement to Trooper Dalton.

Trooper Ryan Dalton testified that he arrived at the scene of a head-on collision between a gold Mercury and a red Ford Ranger on a straight, level, flat road. The vehicles were primarily in the lane in which the Mercury had been traveling. An audio recorder

---

[1]These facts are taken from the State's recitation of the facts at the plea hearing.

attached to Trooper Dalton's person and a video camera on his dash captured some of the interactions between him and the defendant. Trooper Dalton testified that the defendant smelled of alcohol, that he had red, watery eyes, and that he admitted that he had consumed at least two twenty-four ounce beers. Deputy Graham also smelled alcohol on the defendant, although he testified that it smelled "old." The audio recording reveals that Trooper Dalton was informed that the victim had told law enforcement that she saw the defendant driving in her lane and that she veered into his lane in an attempt to avoid collision.

Trooper Dalton acknowledged that someone on the scene had told him, "I don't smell anything on him. That is all I know." He also acknowledged that the defendant had no slurred speech and did not stagger. Deputy Graham, however, testified that the defendant's speech was occasionally slurred and that he was unsteady on his feet. Trooper Dalton described the defendant's mental state as in a "stupor" on a form, but he acknowledged that the defendant's stupor may have been related to the collision and that his red eyes could be the result of fishing all night.

After receiving information from the officers already on the scene, Trooper Dalton asked the defendant to perform four field sobriety tests. The State did not rely on the horizontal gaze nystagmus ("HGN") test. Trooper Dalton testified regarding various clues that the defendant was impaired, which were manifest in the other tests. The prosecution presented Trooper Dalton with an Alcohol and Drug Influence Report, which Trooper Dalton was not able to authenticate, since it differed from the copy he had filled out.[2] Trooper Dalton's form, which was also made an exhibit, indicated that the defendant showed one clue on the walk-and-turn test and one on the one-leg stand test; both tests require two clues to indicate impairment. Trooper Dalton, however, testified that there was a second clue on the walk-and-turn which he did not write on the form but which he recalled from his hand gestures flagging the clue on the video. The defendant did not perform satisfactorily on a non-standardized finger dexterity test.

The defendant's expert in DUI detection and standardized field sobriety testing, Anthony Palacios, testified that the results of the HGN test were not valid due to various errors in administration. He also testified that, from his review of the video, there was no error on the walk-and-turn test and that there was no error in the one-legged stand. He testified that, in his opinion, there was not probable cause to arrest the defendant.

After the field sobriety tests, Deputy Graham heard the defendant say, "I passed all of his tests even if I am drunk." However, he ultimately testified that he did not tell Trooper

_____

[2]The altered form showed two clues indicating impairment for the walk-and-turn test and zero for the one-legged stand.

Dalton about this statement prior to the defendant's arrest.

Trooper Dalton placed the defendant under arrest, and the defendant consented to give blood. He signed the implied consent form. Trooper Dalton acknowledged that he did not read the implied consent law to the defendant. He informed the defendant regarding his right to remain silent and then questioned the defendant, who acknowledged that he had driven on the yellow line. During the car ride to prison, the defendant told Trooper Dalton that the whiskey belonged to his girlfriend. Trooper Dalton testified that the defendant told him that he put the whiskey in his truck and sipped a couple of sips on his way home and that was probably the cause of the accident.

The trial court denied the defendant's motions to suppress. The trial court made factual findings regarding the field sobriety tests, including the finding that the defendant exhibited impairment on the walk-and-turn. Ultimately, however, the trial court concluded that it did not need to make factual determinations regarding whether the defendant passed the field sobriety tests because it found that the totality of the circumstances gave rise to probable cause to arrest the defendant. In support of this, the trial court found that there was a head-on collision occurring primarily in the other driver's lane, that Trooper Dalton observed the defendant's eyes to be red and watery, that Trooper Dalton smelled alcohol on the defendant, and that the defendant admitted drinking two twenty-four ounce beers. The trial court also noted the containers of alcoholic beverages found in and near the defendant's car. The trial court found that the defendant consented to the blood alcohol test and that the defendant's statements were either made when he was not in custody or were not in response to interrogation.

After the trial court denied the motions to suppress, the defendant filed four more motions to suppress: one to suppress the blood evidence based on alleged defects in the chain of custody; one to suppress the statements he made in Trooper Dalton's vehicle that the whiskey bottles belonged to his girlfriend and that he had been taking sips from them; one to suppress the testimony of a witness whom the defendant had run off the road prior to the accident; and one to suppress the alcoholic beverage containers recovered from the scene on the basis that one was obtained as the result of an illegal search and the other was not sufficiently connected to the defendant, having been found in the road. The trial court denied the motion regarding the defendant's statements to Trooper Dalton and the motion regarding the chain of custody before the defendant made the decision to plead guilty.

The defendant entered a best interest guilty plea to DUI, vehicular homicide, vehicular homicide as a result of driver intoxication, vehicular assault, and violating the open container law. At the sentencing hearing, the victim of the vehicular assault testified regarding the extensive injuries she received, including a broken leg and toe, broken ribs, and a knee that

was "almost destroyed." The victim's recovery included a three-month stay in a hospital bed, and at the time of the hearing she was still walking with a limp, experiencing intermittent pain, and unable to walk long distances. She testified that at the scene of the wreck, the defendant looked at her and her eighty-eight-year-old mother, who was the passenger, and said, "Well, you two damned old b-tches done tore my truck up." The passenger's grandson testified regarding the loss she was to the family and stated that the defendant never expressed sorrow about the accident. Sergeant Will Spivey of the Tennessee Highway Patrol testified that there had been over 1,400 alcohol-related accidents in the surrounding three counties during the past nine years. Based on Sergeant Spivey's knowledge of sentencing in DUI crimes, incarceration was a good deterrent. He acknowledged that there were numerous repeat offenders in the county who had not been deterred. David Williams and Mike Phillips testified as character witnesses for the defendant that he was a good worker, that he came to work conscientiously, and that they had never seen the defendant intoxicated. Sue Alsup Winsett testified that the defendant had been a faithful employee of her husband's, that he had helped her and her husband with various jobs around the house, that he was caring and dependable, and that she had never observed him to be intoxicated.

The defendant testified that he had no history of crime or of alcohol or drug abuse. He testified that he had served in the military and had held steady employment. He had only driven once since the accident and had only consumed alcohol on Saturdays at his home. He testified that he was sorry about what had happened and that he wished he could have done something to "make it right." He denied having said anything to the victims at the crime scene. He acknowledged having told his mother that he would not drink and drive anymore and that "this time" he meant it. He acknowledged having had some problem with alcohol in the military and drinking most of a twelve pack of beer the night of the crash. The defendant's presentencing report contained a statement from him in which he said, "I do not think alcohol was the reason for the wreck."

The trial court found that two enhancement factors applied to both the vehicular homicide and the vehicular assault convictions: (1) defendant's prior criminal history, which the court found was not entitled to much weight because the offenses were traffic violations; and (10) the finding that the defendant had no hesitation about committing a crime where the risk to human life was high because he drove with a blood alcohol level of .19 percent. *See* T.C.A. § 40-35-114. The trial court enhanced the vehicular assault sentence based on factor (6), the fact that the personal injuries inflicted upon the victim were particularly great, and it found that the eighty-eight-year-old vehicular homicide victim was particularly vulnerable due to age under factor (4). *Id.*

The DUI and vehicular homicide convictions merged into the vehicular homicide while intoxicated conviction. In denying an alternative sentence, the trial court found that

confinement was necessary both as a deterrent and to avoid depreciating the seriousness of the offense. The trial court concluded that, because it had denied alternative sentencing, it would sentence the defendant to the minimum of eight years on the vehicular homicide conviction. The court sentenced him to a concurrent four-year sentence on the vehicular assault and fined him fifty dollars for violating the open container law.

The defendant reserved the following certified questions for appeal:

> (1) Whether Trooper Dalton had probable cause to arrest the Defendant on August 20, 2011, considering the totality of the circumstances including the results of the field sobriety tests; (2) Whether the Court erred in ruling the results of the blood-alcohol analysis were admissible considering that the test should not have been conducted if the arresting officer lacked probable cause to arrest the Defendant and further whether chain of custody defects warranted the suppression of the test results; (3) Whether the Court erred in failing to suppress the whiskey bottle recovered from the Defendant's vehicle pursuant to an alleged illegal warrantless search and statements allegedly made by the Defendant at the crash scene and following his arrest considering the manner in which the arresting officer administered Miranda warnings to the Defendant; and (4) whether Trooper Dalton's inconsistent testimony and the inconsistencies in the documents prepared by Trooper Dalton undermined his credibility to the point that the Trial Court erred by relying upon the testimony of Trooper Dalton in finding that the arrest of the Defendant was proper.

## ANALYSIS

### I. Certified Questions

Under Tennessee Rule of Criminal Procedure 37(b)(2)(D), a defendant may appeal an issue from a guilty plea if:

> (D) the defendant – with the consent of the court – explicitly reserved the right to appeal a certified question of law that is dispositive of the case, and the requirements of Rule 37(b)(2) are met, except the judgment or order reserving the certified question need not reflect the state's consent to the appeal or the

state's opinion that the question is dispositive.

Tenn. R. Crim. P. 37(b)(2)(D) (2012).[3]  In this case, there was no negotiated sentence, and The State did not consent to the appeal or agree that the questions were dispositive.  The other requirements of Rule 37(b)(2) referenced by subsection (b)(2)(D) include:

> (A) the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved – with the consent of the state and of the court – the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
>
> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
>
> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case

Tenn. R. Crim. P. 37(b)(2) (2012).

Under the Rule, the question appealed must be dispositive.  Tenn. R. Crim. P. 37(b)(2)(A).  A question is dispositive when the appellate court is left with two options: to affirm the judgment or to reverse the trial court and dismiss the case.  *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007); *State v. Robinson*, 328 S.W.3d 513, 518 n.2 (Tenn. Crim.

---

[3]This section, as well as Tennessee Rule of Criminal Procedure 37(b)(2)(A), were amended effective July 1, 2013 to correct a drafting error.  Tenn. R. Crim. P. 37, Advisory Comm'n Cmt; *see State v. Lands*, 377 S.W.3d 678 (Tenn. Crim. App. 2012).

App. 2010). Although the parties and trial court may be in agreement that a question is dispositive, the reviewing court is not bound by such an agreement and must make an independent determination that the certified question is dispositive. *Dailey*, 235 S.W.3d at 134-35. This court does not accept jurisdiction to decide certified questions of law that are not dispositive. *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001). When the record contains incriminating evidence apart from that challenged through the certified question, the appellate court must dismiss the appeal because the certified question is not dispositive. *See Dailey*, 235 S.W.3d at 135-36 (citing cases).

The defendant asserts that the trial court erred in denying his motions to suppress and that these determinations are dispositive of his convictions. A trial court's findings of fact made during a hearing on a motion to suppress are binding on an appellate court unless the evidence preponderates otherwise. *State v. Cox*, 171 S.W.3d 174, 178 (Tenn. 2005). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences drawn from the evidence. *Id.* The trial court's application of law to the facts, however, is reviewed de novo. *State v. Williamson*, 368 S.W.3d 468, 473 (Tenn. 2012). "The determination of probable cause is a mixed question of law and fact that we review de novo." *State v. Bell*, No. E2011-01241-SC-R11-CD, __S.W.3d __, 2014 WL 644502, at *3 (Tenn. Feb. 20, 2014).

## A. Probable Cause to Arrest

The crux of the defendant's argument is that, while Trooper Dalton may have had reasonable suspicion to investigate the defendant's state of intoxication, the defendant's satisfactory performance on the field sobriety tests negates probable cause to arrest him for DUI and that the probable cause to arrest him is dispositive of his convictions. Neither the defendant nor the State submitted analysis addressing whether this certified question is dispositive of each of the defendant's separate convictions.

We begin by determining that the existence of probable cause for the defendant's arrest at the scene for DUI is not dispositive of his conviction for reckless vehicular homicide. Likewise, his conviction for the violation of the open container law was not affected by his performance on the field sobriety tests or the extent of his intoxication. Accordingly, whether there was probable cause to arrest him for DUI is not dispositive of these convictions.

The defendant was also convicted of DUI, vehicular homicide as a proximate result

of intoxication, and vehicular assault as a proximate result of intoxication. *See* T.C.A. §§ 55-10-401, 39-13-213(a)(2), 39-13-106. Whether there was probable cause to arrest the defendant for DUI is dispositive of his convictions for DUI, for vehicular homicide as a result of intoxication, and for vehicular assault as a result of intoxication. *See Bell*, 2014 WL 644502, at *1.

Law enforcement officers may make a warrantless arrest for DUI as long as the arrest is supported by probable cause. *Id*. at *4. Probable cause requires more than mere suspicion but need not rise to the level of absolute certainty. *State v. Melson*, 638 S.W.2d 342, 350 (Tenn. 1982). The concept of probable cause deals with probabilities and not with technicalities. *State v. Echols*, 382 S.W.3d 266, 278 (Tenn. 2012). "Probable cause depends on whether the facts and circumstances and reliable information known to the officer at the time of arrest were 'sufficient to warrant a prudent [person] in believing that the [individual] had committed or was committing an offense.'" *State v. Lawrence*, 154 S.W.3d 71, 75-76 (Tenn. 2005) (quoting *State v. Bridges*, 963 S.W.2d 487, 491 (Tenn. 1997)). The existence of probable cause is determined by the collective knowledge of law enforcement personnel, as long as the arresting officer had a "sufficient nexus of communication" with other officers who possessed relevant information. *Echols*, 382 S.W.3d at 278. "Such a nexus exists when the officers are relaying information or when one officer directs another officer to act." *Bell*, 2014 WL 644502, at *5.

In *State v. Bell*, the Tennessee Supreme Court was faced with the same question we consider here. The defendant there was driving in the wrong direction on a divided highway, smelled of alcohol, and admitted to drinking. *Bell*, 2014 WL 644502, at *1. The defendant's performance on the field sobriety tests was in dispute. *Id*. at *5. The Tennessee Supreme Court determined that, even if the defendant had performed all of the tests satisfactorily, his performance did not undermine the other circumstances establishing probable cause. *Id*. at *9. The court held that "performance on field sobriety tests is but one of the many factors officers should consider when deciding whether to arrest a motorist for DUI or similar offenses without a warrant." *Id*. at *8. Because the defendant committed a significant moving violation, smelled of alcohol, and admitted to having consumed more than he should have, there was probable cause to arrest the defendant. *Id*. at *9.

We conclude that, considering the totality of the circumstances, there was likewise probable cause to arrest the defendant in this case, even if – contrary to the trial court's determination – he performed satisfactorily on all of the field sobriety tests. The defendant was involved in a head-on collision which occurred mainly in the opposing lane of traffic. The victim had told law enforcement that he was so far in her lane that she veered into his to try to avoid him. He smelled of alcohol and had red eyes. He acknowledged having consumed two twenty-four ounce beers, and several beer cans and a half-empty whiskey

bottle were found strewn from the passenger's side door of his car. Considering the totality of the circumstances, there was probable cause to arrest the defendant for DUI.[4] *See State v. Evetts*, 670 S.W.2d 640, 641 (Tenn. Crim. App. 1984) (concluding there was probable cause to arrest the defendant when the defendant smelled of alcohol and was involved in a collision in which he appeared at fault, even though nothing else suggested that he was impaired).

The defendant attempts to distinguish *Bell*, which was filed after the initial briefs in this case, by dwelling on the court's finding that the defendant there committed a significant moving violation and that he admitted to having consumed "more than [he] should have." *Bell*, 2014 WL 644502, at *9. Although he offers the testimony of Trooper Dalton that Trooper Dalton could not initially determine which vehicle was at fault because both were across the yellow line, "probable cause may be established 'even though the facts known to the officer could also be reconciled with innocence.'" *Id.* at *9 (quoting *State v. Grier*, 791 P.2d 627, 628, 632 n.3 (Alaska Ct. App. 1990)). We also note that the audio recording reveals that law enforcement officers relayed to Trooper Dalton the vehicular assault victim's statement that the defendant was so far in her lane that she swerved into his lane to avoid collision. We conclude that there was probable cause to arrest the defendant even if he performed satisfactorily on the field sobriety tests. Accordingly, the trial court did not err in denying the motion to suppress on this basis.

## B. Blood Alcohol Test, Whiskey Bottle, Incriminating Statements, and Witness Credibility

The defendant next challenges the denial of the motions to suppress the blood alcohol evidence, the whiskey bottle recovered from his car, and incriminating statements he made to Trooper Dalton after his arrest. The defendant challenges the blood alcohol evidence based on the chain of custody and on Trooper Dalton's failure to read the implied consent law. The defendant also argues that whiskey bottle recovered from the scene should be suppressed because it was the product of an illegal search.[5] He contends that the incriminating statements were made after he was improperly questioned without having waived his Fifth Amendment rights. A certified question is not dispositive if the record contains incriminating evidence apart from the evidence challenged through the certified

---

[4]The defendant relies on Trooper Dalton's testimony that he did not have probable cause prior to the field sobriety tests. However, the arresting officer's belief in the existence of probable cause is irrelevant to the determination. *Bell*, 2014 WL 644502, at *5.

[5]Although the defendant's motion also sought to suppress the containers recovered from the roadway, he does not raise this issue on appeal.

question. *Dailey*, 235 S.W.3d at 134-35. None of these issues are dispositive of the defendant's convictions.

The defendant's reckless vehicular homicide conviction is not affected by the blood alcohol evidence, the evidence of a half-empty whiskey bottle, or the evidence of the defendant's post-arrest statements to Trooper Dalton.

The defendant was convicted of DUI, not DUI per se. Accordingly, blood alcohol evidence is not indispensable to the State's case. The defendant's conviction for vehicular homicide while DUI and vehicular assault while DUI require a finding that the injuries were a proximate result of the driver's intoxication. T.C.A. § 39-13-213(a)(2), -106(a). Even without the blood alcohol test, there was ample testimonial evidence to support the convictions, including testimony that the defendant had been involved in a head-on collision partially outside his lane of travel; that the defendant smelled of alcohol; that the defendant had red, watery eyes; that the defendant acknowledged drinking prior to arrest; that the defendant was unsteady and occasionally slurred his speech; and that alcoholic beverage containers were recovered from the middle of the road next to the defendant's open door. Accordingly, the blood alcohol test, the open container of whiskey, and the incriminating statements are not dispositive of these convictions.

The defendant's conviction for violating the open container law is likewise not dependent on the bottle recovered from his vehicle. First, we note that there is nothing in the record to show that this motion to suppress was denied. The defendant accordingly cannot premise error upon the suppression of this evidence. By pleading guilty prior to the trial court's decision, the defendant has waived this issue. In any event, the record contains evidence that a witness saw the defendant hide a whiskey bottle behind the seat of his car, that a whiskey bottle was recovered from the roadway, strewn near the open passenger's side door of the defendant's vehicle, and that the defendant told Deputy Graham, prior to Trooper Dalton's arrival, that the whiskey belonged to his fiancee. The admissibility of the bottle from the car does not affect the admissibility of this evidence.

Accordingly, the challenged evidence is not dispositive of any of the defendant's convictions. Of course, a trial court's determinations regarding witness credibility[6] are binding on an appellate court unless the evidence preponderates otherwise, and these determinations are likewise not dispositive of the convictions.

## II. Sentencing

_____

[6]The defendant does not brief this question, which was one of the certified questions, as a separate issue on appeal.

The defendant also challenges the trial court's application of enhancement factors and its denial of alternative sentencing. The trial court sentenced the defendant to the minimum sentence of eight years for the vehicular homicide conviction and to a concurrent sentence of four years for the vehicular assault. The defendant contends that the various enhancement factors do not apply to his convictions. He acknowledges that any error in applying enhancement factors "did not result in [an] excessive effective sentence," but he argues that the trial court considered the misapplied enhancement factors in denying an alternative sentence.

A trial court's decision regarding the length and manner of service of a sentence is reviewed for abuse of discretion, with a presumption of reasonableness granted to within-range sentences reflecting a proper application of the purposes and principles of the Sentencing Act. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Under *Bise,* "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." *Id.* at 706. In fact, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed" from the Sentencing Act. *Id.* at 706. A sentence within the appropriate range will be upheld so long as "there are other reasons consistent with the purposes and principles of sentencing." *Id.* The trial court acted consistently with the purposes and principles of the Sentencing Act, both sentences fell within the appropriate range, and in fact, the defendant was sentenced to the minimum term for the vehicular homicide conviction. We conclude that, as the defendant concedes, the trial court did not abuse its discretion in imposing an effective eight-year sentence.

Tennessee Code Annotated section 40-35-104 authorizes alternative sentences, which may include a sentence of confinement that is suspended upon a term of probation or a sentence of continuous or periodic confinement in conjunction with a term of probation. T.C.A. § 40-35-104(c)(3), (4), (5). A defendant is eligible for probation if the sentence imposed is ten years or fewer. T.C.A. § 40-35-303(a). Although "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants," the defendant bears the burden of "establishing suitability" for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

The Tennessee Supreme Court explicitly applied the abuse of discretion standard of review in *Bise* to alternative sentencing in *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) ("[T]he abuse of discretion standard, accompanied by a presumption of

reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence.").

A defendant who is sentenced as an especially mitigated or standard offender and who has committed a Class C, D, or E felony should be "considered as a favorable candidate for alternative sentencing options" if certain conditions are met. T.C.A. § 40-35-102(5), (6)(A). The guideline regarding favorable candidates is advisory. T.C.A. § 40-35-102(6)(D). The defendant here was convicted of vehicular homicide while intoxicated, a Class B felony, and was therefore not a favorable candidate.

Tennessee Code Annotated section 40-35-103 requires that sentences involving confinement be based on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

T.C.A. § 40-35-103(1). The trial court in this case relied both on the need for deterrence and on the need to avoid depreciating the seriousness of the offense. In *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000), the Tennessee Supreme Court created a non-exhaustive list of factors to consider in determining whether deterrence was a proper basis to deny alternative sentencing: (1) whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole; (2) whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior; (3) whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case; (4) whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective; and (5) whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions. *Id.* at 10-12.

In *State v. Sihapanya*, the Tennessee Supreme Court reviewed a denial of probation based on both a need to avoid depreciating the seriousness of the offense and a need for deterrence considering the nature and circumstances of the offense. *State v. Sihapanya*, No. W2012-00716-SC-R11-CD, __S.W.3d __, 2014 WL 2466054, at *3 (Tenn. April 30, 2014). The court held that "the heightened standard of review [in *Hooper*] that applies to cases in which the trial court denies probation based on only one of these factors is inapplicable in this case." *Id.*

Even if the *Hooper* factors were applicable, the State here introduced statistical evidence that the crime was present in the community[7] and that the defendant's actions were intentional, knowing, or reckless. The defendant's argument that the State failed to prove that the defendant's incarceration would actually and in fact function as a deterrent is of no avail. The *Hooper* court noted that deterrence, though based on common sense, involves undemonstrable predictions, and that, accordingly,

> we will presume that a trial court's decision to incarcerate a defendant based on a need for deterrence is correct so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes.

*Id.* at 10.

Because the trial court's decision was supported by multiple factors, including a demonstrated need for deterrence, we do not, according to *Sihapanya*, consider whether the trial court's finding that confinement was necessary to avoid depreciating the seriousness of the offense was supported by a determination that "the circumstances of the offense as committed [were] especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree," and that the nature of the offense outweighed all factors favoring a sentence other than confinement. *Sihapanya*, 2014 WL 2466054, at *3 (quoting *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006)).

The defendant argues that the misapplication of certain enhancement factors led the trial court to deny alternative sentencing. In *Bise*, the court held that "a trial court's

---

[7]The defendant lodged no objection to the introduction of the statistical report and has accordingly waived the argument raised in his brief that the report was unreliable hearsay.

-14-

misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed" from the Sentencing Act. *Bise*, 380 S.W.3d at 706. In *Sihapanya*, the court applied this same standard of review to alternative sentencing, holding that "a trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *Sihapanya*, 2014 WL 2466054, at *3. The court in *Sihapanya* upheld the trial court's sentencing decision even though it erroneously relied on a fact that was not in the record. The court concluded that the trial court did not abuse its discretion despite the reliance on facts outside the record because the trial court also properly considered the statutory criteria and other facts and circumstances supported by the record and because its determination was consistent with the purposes and principles of sentencing. *Id.* We accordingly conclude that any misapplication of the enhancement factors did not invalidate the decision regarding alternative sentencing because the trial court here also relied on the statutory factors and because its decision was consistent with the purposes and principles of sentencing.

## CONCLUSION

Because there was probable cause to arrest the defendant, we affirm the denial of the motion to suppress. We further determine that the trial court did not err in sentencing and that the remaining certified questions are not dispositive of the convictions.

_____
JOHN EVERETT WILLIAMS, JUDGE